# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **PAULINE DALE STONEHILL** ) | |
| Co-Executor and Co-Special Administrator ) | |
| Estate of Harry S. Stonehill ) | |
| Calle Guillermo Tell 14 ) | |
| Churriana 29140 Malaga, ESP ) | |
| ) | |
| **Plaintiff** ) | |
| ) | Civil Action No. _____ |
| v. ) | |
| **NATIONAL ARCHIVES AND RECORDS** ) | |
| **ADMINISTRATION** ) | |
| 8601 Adelphi Road ) | |
| College Park, MD  20740 ) | |
| ) | |
| **Defendant** ) | |
| _____ ) | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Pauline Dale Stonehill, Co-executor and Co-special administrator of the Estate

of Harry S. Stonehill ("Stonehill"), by and through her undersigned counsel, brings this action

against Defendant the National Archives and Records Administration ("NARA") to compel

compliance with the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA").  As grounds

therefor, Plaintiff alleges as follows:

## NATURE OF ACTION

1.      This is an action under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA")

to obtain agency records that NARA has improperly withheld from Mrs. Stonehill, the Co-

executor and Co-administrator of her husband's estate.   The withheld documents relate to

information about Criminal Division files that were stored at the Washington National Records

Center ("WNRC"), including two files (DJ#46-16-704) that were returned to the Criminal

Division, placed in a Criminal Division safe, selectively introduced by Department of Justice

Tax Division attorneys in the Rule 60(b) proceeding (*Stonehill v. U.S.*) and then purportedly lost one year after Stonehill filed an FOIA request for the same documents. On April 5, 2017, NARA reported that there are "case files available at NARA under DJ#46-16-704."

    2.    The withheld documents also relate to two boxes of Stonehill documents that the IRS falsely claimed had been lost during more than a decade of inordinately protracted FOIA and Rule 60(b)(6) litigation- -in which progressive "discoveries" of documents by the IRS led **five documents** to become **eight boxes of documents**, to become **ninety-four boxes of documents**. At the end of a two-year review process, the IRS reported that the box containing the Tax Division attorney notes for preparation of the Chief Counsel's May 20, 1966 memorandum, detailing government participation in the raids and wiretapping, was missing. Documents recently produced by the IRS unequivocally show that at the time these statements were made, the IRS had possession of the missing boxes and knew that its statements made to the Courts in two separate judicial proceedings were false. *See Stonehill v. IRS*, Civil Action No. 1:19-cv-03644

    3.    The documents Mrs. Stonehill has requested from NARA, relate to NARA's current possession of the "lost" IRS Stonehill boxes and NARA's knowledge about the location of the lost Stonehill Criminal Division files.

    4.    The IRS and the Criminal Division's extraordinary delay in processing Mrs. Stonehill's FOIA requests during the past eight years and NARA's most recent failure to timely respond to Mrs. Stonehill's FOIA requests, is part of the decades-long effort by the Government to delay and to prevent disclosure of documents which show government misconduct during the original Stonehill investigation and its participation in the subsequent raids which were precipitated by a January 10, 1962, American Embassy cable that said:

> It is imperative for American Interests in the Philippines that some way be found to get Stonehill out of the Philippines and break his stranglehold here…the only attack that can be made on Stonehill is through the IRS.[1]

Seven weeks later, on March 2, 1962, seventeen Stonehill corporations were raided by the Philippine National Bureau of Investigation ("NBI") and Stonehill was arrested and deported. FBI documents reflect that J. Edgar Hoover personally oversaw the raids and related strategy.

5.     As detailed herein, over several decades and continuing to the present, the efforts of Mr. Stonehill, when he was alive, and his wife as his executor, to obtain vital documents from the federal government through various FOIA requests have been thwarted through various government wrongdoing, ranging from mere negligence and sloth, to false statements and representations made to various courts,  and to outright apparent document destruction of incriminating documents, to which we believe culpable individuals were given access. The documents that Mrs. Stonehill seeks to compel production have already been or readily could be assembled –the requests herein are very focused, and NARA has asserted no ground, much less good ground for failing to timely respond to those requests.


**JURISDICTION AND VENUE**

6.     The Court has jurisdiction over this action pursuant to 5 U.S.C. § 552 (a)(4)(B) and 28 U.S.C. §1331.

7.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 (e).

**PARTIES**

8.     Plaintiff is the Co-executor and Co-special administrator of the Estate of Harry

---

[1] Memorandum dated January 10, 1962, from Robert Chandler, Revenue Service Representative in Manila to C. I. Fox, Director, IRS Office of International Operations. (Exhibit 2)

S. Stonehill, and she resides at Calle Guillermo Tell 14, Churriana 29140, Malaga, Spain.

9.      Defendant, National Archives and Records Administration ("NARA"), is an Agency of the United States and is headquartered at 8601 Adelphi Road, College Park, MD 2070-60001.  Defendant NARA has possession, custody and control of public records to which Plaintiff seeks access.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY
### The Original Proceedings

10.      In 1962, Philippine authorities conducted warrantless raids of Stonehill's Philippine enterprises.

11.      The Philippine government then provided seized documents to the United States, and the United States used these materials to commence both civil and criminal tax proceedings against Stonehill.

12.      The criminal proceedings in New York ended in an acquittal following a bench trial.

13.      In the civil tax litigation, Stonehill moved to suppress the seized documents on the theory that the United States, acting without a legal warrant, actually instigated and helped plan the raids in violation of the Fourth Amendment to the United States Constitution.

14.      The Government vehemently denied these charges to both the United States District Court of California and the United States Court of Appeals for the Ninth Circuit. ("Ninth Circuit")

15.      After producing a handful of documents related to Government instigation and participation in the raids during the suppression hearings in 1967, the Government further represented to the Ninth Circuit that "[e]very piece of relevant correspondence, memoranda,

cablegrams etc. whose existence has been identified in either the extensive discovery conducted

on behalf of the taxpayers or at the trial had been produced."

16.    In reliance on the Government representations, a divided Ninth Circuit panel

found that the Government did not instigate or help plan the raids, which they acknowledged

would be illegal if instigated by the U.S.  *See Stonehill v, United States*, 405 F. 2d 738 (9th Cir.

1968).

17.    The dissenting judge concluded that, despite Government representations

otherwise, the evidence indicated that the Government instigated and helped plan the raids

without a warrant, thereby rendering the search illegal.  See *id*. (Browning, J., dissenting).

18.    The Government ultimately obtained a tax judgment against Stonehill in 1984 and

receivership proceedings continued for twelve years thereafter. The Government economically

destroyed Stonehill.

**1998 FOIA Request No. 99-12084**

19.    On July 10, 1998, Stonehill filed FOIA Request No. 99-12084 with the IRS

seeking "all records, files, hearing transcripts, notes or memoranda of meetings or telephone

conversations, and other data in your possession, custody, control pertaining to Robert P.

Brooks [and] Harry S. Stonehill[.]"

20.    Stonehill also filed FOIA requests with the State Department, the Federal Bureau

of Investigation ("FBI"), the Department of Justice ("DOJ"), and the CIA on July 10, 1998.

21.    On December 11, 1998, the IRS produced **five documents.**  According to IRS

Disclosure Officer Steven Flesner ("Flesner"), these documents were located following "a

thorough search of all available records under the jurisdiction of the Assistant Commissioner

(International)." Letter from S. Flesner to R. Heggestad (December 11, 1998), attached hereto as Ex. 1(a).

22.     Flesner advised Stonehill's counsel on January 6, 1999, that other than the few documents that had been provided in full, there "were no other documents under our jurisdiction responsive to your request" and if additional documents "exist, they are not in [IRS] possession at this time." Letter from S. Flesner to R. Heggestad (January 6, 1999), attached hereto as Ex. 1(b).

23.     Flesner recommended that because "this case was litigated by the Department of Justice for a number of years…. further correspondence concerning these records" should be directed "to the Department of Justice under a Freedom of Information Act request."

24.     On January 8, 1999, Stonehill submitted a new FOIA request to DOJ which included the related correspondence from Flesner.

25.     On January 26, the FOIA request was forwarded by the Justice Management Division to the Executive Office for U.S. Attorneys.

26.     On March 5, 1999, DOJ Senior Counsel for the FOIA/PA Unit for the EOUSA responded that the requested Stonehill records had been destroyed.  Letter from B. Gay to R. Heggestad (March 5, 1999), attached hereto as Ex. 1(c).

27.     On July 31, 1999, Stonehill appealed the IRS decision that claimed responsive documents to Stonehill's FOIA request could not be located.

28.     On October 29, 1999 IRS Chief of Disclosure Litigation Donald Squires ("Squires") denied Stonehill's appeal stating that "to the best of our knowledge, these documents could not be located, and through discussions with appropriate Service employees, we believe

that these documents indeed could not be found." Letter from D. Squires to R. Heggestad (October 29, 1999), attached hereto as Ex. 1(d).

## Rule 60(b) Proceedings

29.    After obtaining documents from the FBI and the State Department that contained evidence that FBI attaché Robert Hawley had lied when testifying during the suppression hearings, Stonehill filed a motion to set aside the judgment pursuant to Federal Rule of Civil Procedure 60(b)(6) on April 25, 2000.

## 2001 Renewed IRS FOIA Request

30.    On November 30, 2000, Stonehill was provided with copies of several hundred documents from the DOJ Tax Division, many of which were authored by the IRS Chief Counsel and by IRS agents who directly participated in the Stonehill case.

31.    On March 15, 2001, Stonehill's undersigned counsel contacted the original IRS Disclosure Officer, Steven Flesner, and asked him why IRS documents produced by the Tax Division were not also available in IRS files. Fletcher disclosed to Stonehill's counsel that the documents which were responsive to Stonehill's 1998 FOIA request were located and still available at the Office of the Associate Chief Counsel, International Operations Branch.

32.    On March 15, 2001, Stonehill renewed his request for documents responsive to the 1998 FOIA request with the Manager of the Headquarters Disclosure Office, Catherine Campbell ("Campbell").  Letter from R. Heggestad to C. Campell (March 15, 2001), attached hereto as Ex. 4(a).

33.    Stonehill's counsel informed Campbell that IRS documents responsive to the

7

1998 FOIA  request could be located and should be readily assessable in the Office of the

Associate Chief Counsel, International Operations Branch. EX. 4 (b) March `16, 2001 Letter

from R. Heggestad to C. Campbell.


### IRS Discovery of 8 Boxes of Stonehill Documents

34.    On May 18, 2001, Carroll Field ("Field"), a Tax Specialist at the IRS

Headquarters Disclosure Office, advised Stonehill's counsel that the 2001 FOIA request was

being processed and that **8 boxes** of documents related to the Stonehill case had been located in

the Associate Chief Counsel's Office.

35.    Richard Fultz ("Fultz"), IRS Field Special Counsel in the Office of the Associate

Chief Counsel (International) was assigned to "coordinate and review documents responsive to

[Stonehill's] 1998 and 2001 FOIA requests."  Fultz Affidavit, *Stonehill v. IRS* (March 16, 2007)

par. 3., attached hereto as Ex. 5(a).

36.    Fultz helped Field collect, review and assert exemptions applicable in responding

to Stonehill's 1998 and 2001 FOIA requests.

37.    The IRS produced the eight boxes of newly discovered documents to Stonehill

sequentially between 7/23/01 and 10/01/01.  Letter from C. Field to R. Heggestad (November

26, 2002), Tab I, attached hereto as Ex. 5(b).

### Discovery of 86 boxes of Stonehill Documents

38.    On May 29, 2001, Stonehill filed a motion to stay the decision in the Rule 60(b)

proceeding pending the production and review of the newly discovered 8 boxes of IRS

documents in the Chief Counsel's office.

39.     During the review of Stonehill documents in June 2001, IRS attorney Mae J. Lew

("Lew") reported that she came upon Form 135 (Records Transmittal and Receipt), dated

February 12, 1981 which reflected that 86 boxes, with accession number "58-81-24" were sent

by the IRS to the Washington National Records Center, Suitland, Maryland, 1981.

40.     Fultz and Lew went to the records center to view a sample of contents of boxes to

determine whether the boxes contained documents responsive to Stonehill's FOIA request.

41.     On August 28, 2001, the District Court denied Stonehill's motion to stay the

proceedings pending the production of documents from the 8 boxes of IRS Stonehill

documents; the District Court also denied Stonehill's Rule 60(b) motion.

42.     Fultz did not notify Stonehill that 86 boxes of IRS Stonehill related documents

had been located at the IRS's Washington Records Center in Suitland, Maryland ("the Records

Center") until October 16, 2001, after the motion to stay and Stonehill's Rule 60(b) motion had

been denied.  Fultz Affidavit, *U.S. v. Stonehill* (June 5, 2005) at par. 5, attached hereto as

Exhibit 6(a). Letter from R. Fultz to R. Heggestad (October 16, 2001), attached hereto as Ex

6(b).

43.     The IRS produced the eight boxes of newly discovered documents to Stonehill

sequentially between 7/23/01 and 10/01/01. *Id*. Letter from C. Field to R. Heggestad (November

26, 2002), Tab I, attached hereto as Ex. 5(b).

44.     In his June 5, 2005 Declaration, Fultz stated that "Many of the **84** boxes had

numbers marked on the outside indicating they may have been part of a grouping of **86** boxes."

45.     In his Declaration dated March 16, 2007,[2] submitted on behalf of the IRS in

Stonehill's FOIA litigation, Fultz stated that only "**82** boxes of additional documents related to

---

[2] Fultz Declaration March 16, 2007, Attached hereto as Ex.  5(a)

the investigation of Messrs. Stonehill and Brooks were discovered in a Federal Records Center in Suitland, Maryland" although "the boxes have written markings indicating there were a total of **84**…"

46.     The boxes of newly discovered documents were transported from the Federal Records Center to Washington, D.C. approximately 20 boxes at a time, and produced in part to Stonehill between November 20, 2001 and October 2, 2002.

47.     On January 31, 2002, Stonehill appealed the District Court's decision denying the Rule 60(b) motion to the Ninth Circuit Court of Appeals ("Ninth Circuit").

48.     On November 14, 2002, after the completion of the review of the 86 IRS Stonehill boxes and shortly before oral argument in the Ninth Circuit, Field notified Stonehill's counsel that boxes 17 and 83 were "missing from the Federal Records Center."[3]

49.     The "General Index for the contents of the boxes for the Stonehill and Brooks cases" described Box 17 as containing the "Chief Counsel Criminal Tax Division attorney notes and papers for the review of the Stonehill and brooks cases in preparation of the Chief Counsel's memorandum dated May 20, 1966."[4]

50.     During the eight years following the Ninth Circuit remand, documents were slowly produced during the course of IRS-FOIA litigation and as a result of limited discovery ordered by the District Court in the Rule 60(b) proceeding.

---

[3] Letter from C. Field to R. Heggestad (November 14, 2002), Complaint Ex. 8(a)
[4] Ex. 8 (b) General Index for the contents of the boxes for the Stonehill and Brooks cases."

**"Lost" Criminal Division Files**

51.     On October 3, 2000, November 8, 2000 and November 29, 2000, DOJ Tax Division attorneys in the Rule 60(b) proceeding submitted Stonehill related documents which included IRS documents obtained from Criminal Division files.

52.     On February 8, 2001 Stonehill requested that the Chief of Special Litigation for the Tax Division, provide copies of all documents from Criminal Division files that had been made available to DOJ trial attorneys in the related Rule 60(b) Stonehill case.[5]

53.     On February 9, 2001, the Tax Division advised Stonehill's counsel that in order to obtain all documents from the files, a "Privacy Act or FOIA request for Criminal Division files would have to made to the Criminal Division."[6]

54.     On February 12, 2001, Stonehill filed a new FOIA request with the Chief of the Criminal Division FOIA Unit, Thomas McIntyre ("McIntyre"), seeking copies of all documents relating to Stonehill. (Ex. 3(c))

55.     McIntyre advised Stonehill on March 20, 2001 that because the documents produced to DOJ, which included IRS documents, were marked confidential, they were stored "in a safe" at the Criminal Division. Exhibit 3(d)

56.     On April 3, 2001, DOJ Tax Division attorney Seth Heald ("Heald") confirmed that the documents submitted to the Court in the Rule 60(b) proceeding and provided to Stonehill were obtained from the files in the Criminal Division safe. Letter from S. Heald to R. Heggestad (April 3, 2001), attached hereto as Ex. 3(e).

---

[5] Exhibit 3 (a).
[6] Exhibit 3 (b)

57. Stonehill's request for expedited processing of the February 12, 2001 FOIA request was denied by the Criminal Division

58. On February 6, 2002, almost one year after Stonehill's FOIA request had been filed with the Criminal Division, McIntyre reported that the Stonehill documents stored in the safe were now suddenly "lost" and could no longer be found in the Criminal Division safe or elsewhere at the Criminal Division. Letter from T. McIntyre to R. Heggestad (Feb. 6, 2002), attached hereto as Ex. 3 (f).

**Stonehill Estate**

59. On March 20, 2002, Harry S. Stonehill died.

60. Stonehill's handwritten will dated June 26, 2001, filed with the district court of Monthey (Troistorrents, Switzerland), appointed Stonehill's wife, Pauline (Dale) Stonehill and attorney Jacques Meuwly as executors, Dr. Patrick Lenz as second appointed successor executor and Elizabeth Thompson Stonehill as third appointee successor executor. Handwritten Will of Harry Stonehill (June 26, 2001), pp. 1, 7, attached hereto as 7(a).

61. Stonehill also executed an Addendum to his Last Will and Testament dated June 26, 2001 appointing his brother Joe Steinberg and Pauline Dale Stonehill "to work together as administrators and negotiators, with Attorney Robert Heggestad…to handle my claims against the U.S. Government."

62. On April 23, 2002 , Stonehill's counsel filed a motion with the Ninth Circuit to substitute Pauline Dale Stonehill, the designated co-executor and co-special administrator of the Estate of Harry S. Stonehill, as the Appellant.

## Ninth Circuit Court of Appeal's Remand

63.     On December 19, 2002, the Ninth Circuit remanded the case and directed the District Court to help Stonehill obtain additional relevant documents.

64.     During the eight years following the Ninth Circuit remand, documents were slowly produced during the course of additional IRS FOIA litigation and as a result of limited discovery ordered by the District Court.

65.     The documents produced revealed U.S. planning and participation by the IRS, the CIA and the FBI (under the direction of J. Edgar Hoover) in both the raids and the wiretapping.

66.     The documents produced also revealed that the initial IRS investigation of Stonehill, which had been closed in 1958, had been reopened in April 1960 following receipt of confidential information from Stonehill's Honolulu attorney, William Saunders ("Saunders"), who was identified in the April 27, 1960 IRS report as an informant.

67.     At the time Saunders was providing confidential information to the IRS and the U.S. Attorney in Honolulu, he was under investigation by the IRS.

68.     Following the inadvertent release of a small portion of CIA redacted documents from the IRS, DOJ and the FBI, Stonehill learned that the Philippine National Bureau of Investigation ("NBI") agents, Domasco Nocon ("Nocon") and Jose Lukban ("Lukban"), who led the Philippine investigation and the raids, were likely CIA agents and that the FBI and the CIA had assisted the NBI in wiretapping Stonehill.

69.     On July 14, 2010, the District Court denied Stonehill's motion to vacate the judgment and on September 8, 2010, Stonehill appealed the District Court's decision.

## Ninth Circuit September 28, 2011 Decision

70.     On September 28, 2011 the Court of Appeals for the Ninth Circuit issued its decision denying Stonehill's Rule 60(b) motion, stating that "although the evidence uncovered by the Taxpayers shows some misconduct on the part of the government, it is insufficient to demonstrate fraud on the court." *United States v. Stonehill*, 650 Fed. 3d 415 (9th Cir. 2011).

71.     The Ninth Circuit found that the statements made to the court by John J. McCarthy, the attorney who represented the Government in the Stonehill investigation and litigation for more than two decades, "were not forthright.  They concealed rather than revealed the true state of affairs known to the government." *Id.* 446.

72.     The Ninth Circuit found that the "documents uncovered by Taxpayers through their FOIA requests demonstrate that Hawley [the FBI Special Agent in charge of the Stonehill investigation] lied in his deposition about his knowledge of the raid." *Id* at   The Court concluded that "Hawley's lie concerning what he knew, and when he knew it, likely did not affect the outcome of the case" and that "perjury by a witness does not necessarily constitute fraud on the court." *Id.* at 447-448.

73.     The Ninth Circuit found that although there was evidence that Damaso Nocon ("Nocon"), the NBI agent who conducted the raids, "worked for the CIA, especially in connection with wiretapping activities…," the "fact that Nocon, and perhaps Lukban (the NBI Director) at some point worked with the CIA does not make everything they did the action of the U.S. government for purposes of a suppression hearing." *Id*. at 448-449.

74.      The Ninth Circuit also found that Stonehill's lawyer William Saunders was an informant and "did cooperate with the government." *Id.* at 453-454. The Court concluded that "the government's misrepresentations or false statements made by government witnesses or

attorneys were on largely tangential issues and did not substantially undermine the judicial process by preventing the district court or this court from analyzing the case." *Id.*

### 2014 and 2018 FOIA Requests Related to IRS Lost Boxes

75.     On July 10, 2014, Bethany McLean ("McLean"), a representative of the news media, filed an FOIA request on behalf of Pauline Dale Stonehill ("Plaintiff") for all records and correspondence relating to the storage and review of 86 boxes of IRS Stonehill records located at the Washington Records Center in Suitland Maryland.

76.     After 11 requests for extensions spanning almost three years, on March 31, 2017, the IRS denied the request claiming Mrs. Stonehill did not have authority to access information about her husband's tax matters.[7]

77.     On August 28, 2017 the IRS denied Mclean's appeal and closed the file.[8]

78.     On September 28, 2018, the undersigned counsel filed a second FOIA Request on behalf of Plaintiff, for all records and correspondence discussing or related to the discovery and review of the 8 boxes of Stonehill documents located in the IRS Chief Counsel's office and to the discovery, transfer and review of the 86 boxes of documents located at the Federal Records Center in Suitland, Maryland.[9]

79.     On October 19, 2018, the IRS issued a final response denying Mrs. Stonehill's September 28, 2018 FOIA stating that she was not authorized to have access to confidential tax records.[10] The undersigned counsel appealed the IRS "final response" on December 12, 2018.

---

[7] Ex. 9(a) March 31, 2017 from P. Tompkins to B. McLean.
[8] EX. 9(b) August 28, 2017 letter from T. Carrillo to B. McLean.
[9] Ex. 10(a)-September 29, 2018 FOIA Request from R. Heggestad on behalf of P. Stonehill.
[10] Ex. 10(b).

80.     On December 6, 2019, Plaintiff initiated an FOIA lawsuit, seeking declaratory and injunctive relief requiring the IRS to produce all non-exempt records responsive to Plaintiff's September 28, 2018, FOIA request. (Dkt. 1.)  *Stonehill v. IRS,* Civ. Action No. 1:10-cv-03644.

81.     The unredacted documents released in *Stonehill v. IRS* between July 1, 2021, and October 29, 2021 show that Boxes 17 and 83 were not lost while the boxes were stored at the WNRC prior to 2001 and that the boxes 17 and 83 are currently stored at the WNRC in their designated locations.

82.     In September 2021, Christopher Pinkey, WNRC Acting Director, informed Helene Newsome ("Newsome"), IRS Office of Chief Counsel, that he "directed that a manual check be conducted on each numbered box in this record set: and that "Boxes 17 and 83, as well as every other box in this records set, were stored in their appropriate locations at the WNRC."[11]

83.     Pinkey also reported to Newsome that "the WNTC has no hard copy record, or record in ARCIS, indicating that Boxes 17 and 83 were ever missing from the WNRC."[12]

84.      An Excel spreadsheet prepared by Pinkey for Newsome which identifies the dates of IRS refiles (or returns) confirms that the IRS had possession of the missing boxes 17 and 83 between 2001 and 2013 when the boxes were returned to the WNRC.[13]

85.     The IRS returned **Box 83** to the WNRC on 12/8/2009.[14]

86.     The IRS returned **Box 83** to the WNRC a second time on 5/30/2013, at the same time Box 17 was returned to the WNRC .[15]

---

[11] Newsome Second Declaration, March 31, 2022 at par. 76. Exhibit 10(c).
[12] Id. at par. 76.
[13] See Ex. 11 at Att. 3 STON01086-1089.
[14] Id.
[15] Id.

87.     Pinkey informed the IRS that "most if not all of the boxes were charged out to individuals associated with the Department of Justice Tax Division."[16]

### August 15, 2022 FOIA Request

88.     On August 15, 2022, the undersigned attorney filed an FOIA request with NARA on behalf of Mrs. Stonehill for all records and documents, related to storage, transfer and review of 86 boxes of documents concerning Harry S. Stonehill, accession number 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, ("Stonehill boxes") originally transferred from the Internal Revenue Service ("IRS") to NARA in 1981.[17]

89.     NARA, acknowledged receipt of Mrs. Stonehill's FOIA request on August 16, 2022 (tracking number NGC22-757).

90.     As of the date of this complaint, the Plaintiff has received no further correspondence from NARA.

91.     Because Defendant failed to comply with the time limit set forth in 5 U.S.C.§552(a)(6)(A)-(B), Plaintiff is deemed to have exhausted any and all administrative remedies with respect to her FOIA, pursuant to 5 U.S.C. §552(a)(6)(C).

### Bethany McLean FOIA Request to Criminal Division and NARA

92.     On July 10, 2014, Bethany Mclean ("McLean"), an investigative journalist, filed an FOIA request with the Criminal Division, on behalf of Mrs. Stonehill, for documents related to Stonehill. McLean also filed an FOIA request with the National Archives and Records Administration ("NARA") for all Stonehill documents transferred to NARA from the Department of Justice Criminal Division.

---

[16] Ex. 11 Att. 4. STONO 00501  8/3/2015 email from C. Pinkey to G. Lassiter

[17] Ex. 11.

93.     On July 22, 2014, Martha Wagner Murphy, ("Murphy") NARA Chief, Special Access and FOIA Staff responded to Mclean stating that NARA did not have legal custody of records stored at the Washington National Records Center and that Legal Custody still belongs to the originating agency- the Department of Justice. Murphy informed McLean that to access these records she would need to file an FOIA request with the Department of Justice. (Attached to March 23, 2017 FOIA Request, Exhibit 12).

94.     On August 29, 2014, Kenneth Courter ("Courter'), the Acting Chief of the FOIA/PA Unit for the Criminal Division, informed McLean that "should the records you are seeking still exist, they would be maintained by the National Archives and Records Administration." Courter suggested that McLean file an FOIA request with NARA. (Attached to March 23, 2017 FOIA Request, Exhibit 12).

95.     On October 10, 2014, McLean wrote to NARA and the Criminal Division and requested clarification as to whether she would be allowed to access Criminal Division records stored at NARA (or the Washington National Records Center) concerning Harry Stonehill.

96.     On October 21, 2014, Murphy wrote to McLean and informed her that "DOJ was attempting to inform you that if any records relating to your topic still exist, they would have been scheduled as permanent and transferred to NARA."

97.     On January 23, 2017, McLean requested that NARA provide copies of the records responsive to her July 10, 2014 FOIA request which were stored at the Washington National Records Center ("WNRC") under the name of Robert P. Brooks (DJ# 46-16-704, Accession #60-90-467 and transferred to NARA as permanent records from the Criminal Division.

98.     On March 23, 2017, McLean filed an FOIA request with the Criminal Division for "All documents transferred to the Washington National Records Center from the Department

of Justice (DOJ) Criminal Division, including but not limited to two file jackets filed under the

name of Robert P. Brooks (Mr. Stonehill's co-defendant) DJ 46-16-704, Accession #60-90-467.

(Exhibit 12-(a))

99.     On September 26, 2017, Amanda Marchand Jones ("Jones") responded to Mclean

stating that "we have found reference to records potentially responsive to your request….

However, after a thorough search, some of the records could not be located. The remaining

records that might have been responsive to your request were destroyed pursuant to the Criminal

Division's record retention and disposition schedules…. Therefore, we are closing your request

administratively." Exhibit 12(b)

## September 19, 2018 FOIA Request

100.     On September 19, 2018, the undersigned counsel filed a FOIA request to the

Criminal Division on behalf of Mrs. Stonehill, for all "documents transferred to the Washington

National Records Center from the Department of Justice (DOJ) Criminal Division, including but

not limited to two file jackets filed under the name of Robert P. Brooks (Mr. Stonehill's co-

defendant) DJ#46-16-704. Accession #60-90-467."  (Exhibit 12(c)).   The FOIA request

referenced the Criminal Division's September 26, 2017 response to McLean and asked that in

addition, the Criminal Division provide copies of all electronic correspondence and records

which reference the records potentially responsive to the request or which related to the

destruction of documents responsive to the request.

101.     On September 26, 2018, the Criminal Division acknowledged receipt of the FOIA

request, extending the time for response by 10 days because the request "presents unusual

circumstances."

102.    On June 19, 2020, after numerous requests for status reports, the Criminal Division reported that the request, which had then been pending for 432 business days, was being processed on a complex track which on the average takes 301 days to process and that "[p]otentially responsive records have been received and are under review," (Exhibit 12-d)

103.    On December 9, 2020, the Criminal Division confirmed that "the search has been completed and the request is under review…. it was expected to "be completed within 6 months." (Exhibit 12-e).

104.    On June 4, 2021, the Criminal Division reported that the estimated date of completion was within six months.  (Ex. 12-f)

105.    On February 4, 2022, Mrs. Stonehill filed an FOIA action against the Department of Justice Criminal Division.

## September 14, 2022 NARA FOIA Request

106.    On September 14, 2022, the undersigned counsel submitted an FOIA request to NARA on behalf of Mrs. Stonehill requesting for all records and documents, including electronic correspondence, during the time period January 1, 1998 thru August 31, 2022, related to storage, transfer and review of  records related to Harry S. Stonehill ("Stonehill") contained in Transfer 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, Transfer 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 (DJ No. 46-16-704) and Transfer 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 (DJ No. 46-18-704 and 46-16-704) referenced in an April 5, 2017 email from Alfred Greene, NARA Supervisory Archives Specialist to Everett Gibbons, Criminal Division Records Management.[18]

107.    NARA acknowledged receipt of the FOIA request on September 14, 2022 (tracking number **NGC22-910).**

---

[18] Ex. 12-g

108.    As of the date of this complaint, there has been no further correspondence from NARA responding to Mrs. Stonehill's FOIA request.

109.    Because Defendant failed to comply with the time limit set forth in 5 U.S.C.§552(a)(6)(A)-(B), Plaintiff is deemed to have exhausted any and all administrative remedies with respect to her FOIA, pursuant to 5 U.S.C. §552(a)(6)(C).

## COUNT 1

### (Violation of FOIA, 5 U.S. C.§552)

110.    Plaintiff realleges paragraphs 1-109 as if fully stated herein.

111.    Defendant is unlawfully withholding records requested by Plaintiff pursuant to 5 U.S.C. §552.

112.    The Defendants failed to make a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.

Plaintiff is being irreparably harmed by reason of Defendants' unlawful withholding of requested records, and Plaintiff will continue to be irreparably harmed unless Defendants are compelled to conform its conduct to the requirements of the law.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court: (1) order Defendants to conduct a search for any and all responsive records to Plaintiff's FOIA requests, and demonstrate that it employed search methods reasonably likely to lead to the discovery of records responsive to Plaintiff's FOIA requests; (2) order Defendant to produce, by a date certain, any and all non-exempt records responsive to Plaintiff's FOIA requests and a *Vaughn* index of any responsive records withheld under claim of exemption; (3) enjoin Defendants from

continuing to withhold any and all non-exempt records responsive to Plaintiff's FOIA requests;
(4) grant Plaintiff an award of attorneys' fees and other litigation costs reasonably incurred in
this action pursuant to 5 U.S.C.§552(a)(4)(E); and grant Plaintiff such other relief as the Court
deems just and proper under the circumstances herein.

Dated:  11/04/22                                    Respectfully submitted.

                                                    /s/ Robert E. Heggestad
                                                    Robert E. Heggestad
                                                    D.C. Bar No. 953380
                                                    1747 Pennsylvania Ave., NW Suite 1250
                                                    Washington, DC 20006
                                                    (202) 733-6726
                                                    robert@reheggestad.com