UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PAULINE DALE STONEHILL,<br><br>    Plaintiff,<br><br>    v.<br><br>NATIONAL ARCHIVES AND RECORDS ADMINISTRATION,<br><br>    Defendant. | Civil Action No. 22-3391 (CJN) |

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM IN SUPPORT THEREOF**

# **TABLE OF CONTENTS**

**INTRODUCTION** ................................................................................................................... 1

**BACKGROUND** ..................................................................................................................... 1

    I.      Six Decades of Litigation ............................................................................................. 1

    II.     Three FOIA Requests ................................................................................................ 2

    III.    National Archives and Records Administration ....................................................... 3

    IV.   Records Produced ....................................................................................................... 6

**LEGAL STANDARDS** ............................................................................................................ 6

**ARGUMENT** ............................................................................................................................ 7

    I.      A Shipping Label Is Not an Agency Record ............................................................ 7

    II.     NARA Has Performed an Adequate Search ........................................................... 10

**CONCLUSION** ..................................................................................................................... 15

i

# TABLE OF AUTHORITIES

**CASES**

*American Friends Serv. Comm. v. Webster*,
720 F.2d 29 (D.C. Cir. 1983) ............................................................................................. 3

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ........................................................................................................... 6

*Boyd v. Dep't of Just.*,
475 F.3d 381 (D.C. Cir. 2007) ......................................................................................... 11

*Bureau of Nat'l Affairs, Inc. v. Dep't of Just.*,
742 F.2d 1484 (D.C. Cir. 1984) ......................................................................................... 8

*Burka v. Dep't of Health & Hum. Servs.*,
87 F.3d 508 (D.C. Cir. 1996) ............................................................................................. 8

*Cal-Almond, Inc. v. Dep't of Agric.*,
960 F.2d 105 (9th Cir. 1992) ........................................................................................... 10

*Cause of Action Inst. v. Nat'l Oceanic & Atmospheric Admin.*,
Civ. A. No. 19-1927 (TSC), 2023 WL 3619345 (D.D.C. May 24, 2023) ......................... 7

*Cause of Action Inst. v. Off. Of Mgmt. & Budget*,
10 F.4th 849 (D.C. Cir. 2021) ............................................................................................ 8

*CREW v. Executive Off. of the President*,
587 F. Supp. 2d 48 (D.D.C. 2008) ..................................................................................... 4

*Danik v. Dep't of Just.*,
463 F. Supp. 3d 1 (D.D.C. 2020) ....................................................................................... 8

*Dep't of Just. v. Tax Analysts*,
492 U.S. 136 (1989) ........................................................................................................... 7

*Evans v. Fed. Bureau of Prisons*,
951 F.3d 578 (D.C. Cir. 2020) ........................................................................................... 7

*Int'l Bhd. Of Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Nat'l Mediation Bd.*, 712 F.2d 1495 (D.C. Cir. 1983) ........................................................................... 10

*Jud. Watch, Inc. v. Fed. Hous. Fin. Agency*,
646 F.3d 924 (D.C. Cir. 2011) ........................................................................................... 8

*Oglesby v. Dep't of Army*,
920 F.2d 57 (D.C. Cir. 1990) ........................................................................................... 11

*Pub. Citizen v. Carlin*,
 184 F.3d 900 (D.C. Cir. 1999) .................................................................................................. 3

*Shapiro v. Dep't of Just.*,
 40 F.4th 609 (D.C. Cir. 2022) ................................................................................................ 10

*Stonehill v. CIA*, Civ. A. No. 20-3327 ........................................................................................ 2

*Stonehill v. FBI*, Civ. A. No. 20-1445 (APM) ............................................................................ 2

*Stonehill v. IRS*, Civ. A. No. 19-3644 (RDM) ........................................................................... 2

*Stonehill v. U.S. Dep't of Just. Crim. Div.*, Civ. A. No. 22-0311 (JEB) ...................................... 2

*Stonehill v. U.S. Dep't of Just. Crim. Div.*, Civ. A. No. 22-0311 (JEB),
 2023 WL 4685511 (D.D.C. July 21, 2023) ............................................................................. 1

*Stonehill v. U.S. Dep't of Just. Tax Div.*,
 Civ. A. No. 19-3770 (RC) ....................................................................................................... 2

*United States v. Est. of Stonehill*,
 660 F.3d 415 (9th Cir. 2011) ................................................................................................... 2

**STATUTES**

44 U.S.C. § 2907 ........................................................................................................................... 4

44 U.S.C. § 3103 ........................................................................................................................... 4

44 U.S.C. § 3303 ........................................................................................................................... 4

44 U.S.C. § 3314 ........................................................................................................................... 3

5 U.S.C. § 552 ............................................................................................................................... 1

**RULES**

Fed. R. Civ. P. 56 ..................................................................................................................... 1, 6

**REGULATIONS**

36 C.F.R. § 1225.10 ...................................................................................................................... 4

36 C.F.R. § 1225.14 ...................................................................................................................... 4

36 C.F.R. § 1233.10 ...................................................................................................................... 4

36 C.F.R. § 1233.18 ................................................................................................................... 5, 6

36 C.F.R. § 1235.22 ................................................................................................................. 5

# INTRODUCTION

"For more than six decades, Harry Stonehill and his estate have been attempting to get to the bottom of alleged U.S. Government involvement in a 1962 raid on his businesses in the Philippines." *Stonehill v. U.S. Dep't of Just. Crim. Div.*, Civ. A. No. 22-0311 (JEB), 2023 WL 4685511, at *1 (D.D.C. July 21, 2023). This latest case involves three Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, requests to the National Archives and Records Administration ("NARA" or "Agency"). For the following reasons, pursuant to Federal Rule of Civil Procedure ("Rule") 56, NARA is entitled to summary judgment on Pauline Dale Stonehill's ("Plaintiff's") latest claims under FOIA.

# BACKGROUND

## I.     Six Decades of Litigation

"In 1962, local police raided several businesses across the Philippines that belonged to American citizen Harry Stonehill" and "seized over a million documents." *Stonehill v. U.S. Dep't of Just. Crim. Div.*, 2023 WL 4685511, at *1. "The Philippine government handed many of the documents over to the United States, which began civil tax proceedings against Stonehill using those documents as evidence." *Id.* "[I]n those proceedings Stonehill moved to suppress the documents, arguing that the evidence had been illegally obtained," but the motion was denied in 1967. *Id.* "In 1976, the Government eventually obtained a final civil tax judgment against Stonehill for $8.6 million." *Id.*

On "August 20, 2000, when, upon discovering through FOIA requests to several government agencies that a witness had lied during the 1967 hearing on the motion to suppress, Stonehill filed a Rule 60(b)(6) motion to vacate the 1976 judgment." *Id.* (citation omitted). "His motion maintained that the 1967 motion to suppress was improperly denied." Ultimately, the court denied the motion, and the Ninth Circuit affirmed, finding that the U.S. government did not commit

fraud on the Court. *United States v. Est. of Stonehill*, 660 F.3d 415, 451-52 (9th Cir. 2011) ("Taking into consideration all of Taxpayers' contentions, we conclude that the government did not commit fraud on the court.").

After discovering more information in the intervening years, Plaintiff began to again submit FOIA requests to various agencies. He has submitted requests to and is currently in litigation against the following agencies: the Internal Revenue Service, *see Stonehill v. IRS*, Civ. A. No. 19-3644 (RDM); the Tax Division of the U.S. Department of Justice, *see Stonehill v. U.S. Dep't of Just. Tax Div.*, Civ. A. No. 19-3770 (RC); the Federal Bureau of Investigation, *see Stonehill v. FBI*, Civ. A. No. 20-1445 (APM); the Central Intelligence Agency, *see Stonehill v. CIA*, Civ. A. No. 20-3327; the Criminal Division of the U.S. Department of Justice, *see Stonehill v. U.S. Dep't of Just. Crim. Div.*, Civ. A. No. 22-0311 (JEB); and the National Archives and Records Administration.

## II.   Three FOIA Requests

This case involves three FOIA requests to NARA. On August 15, 2022, Plaintiff served the following first request on NARA for:

> all records and documents, including electronic correspondence, during the time period January 1, 1981 thru August 15, 2022, related to storage, transfer and review of 86 boxes of documents concerning Harry S. Stonehill, accession number 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, ("Stonehill boxes") originally transferred from the Internal Revenue Service ("IRS") to NARA in 1981, including but not limited to: [Plaintiff then lists 22 paragraphs of different categories of information, which are more fully laid out in the request.]

Scanlon Decl. ¶¶ 13-15, ECF No. 21-2. On September 14, 2022, Plaintiff served the following second request for:

> all records and documents, including electronic correspondence, during the time period January 1, 1998 thru August 31, 2022, related to storage, transfer and review of records related to Harry S. Stonehill ("Stonehill") contained in Transfer 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, Transfer 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 (DJ No. 46-16-704) and Transfer 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 (DJ No. 46-18-704 and 46-16-704) referenced in the April 5, 2017 email from

> Alfred Greene to Everett Gibbons, (Attachment 1) including but not limited to: [Plaintiff then lists 6 paragraphs of different categories of information, which are more fully laid out in the request.]

*Id.* ¶ 16. On February 4, 2023, Plaintiff served the following third request:

> all records and documents, including electronic correspondence, during the time period January 1, 1981 thru February 4, 2023, related to storage, transfer and review of 89 boxes of documents (the reference to 89 boxes includes the 86 boxes described in Mrs. Stonehill's August 15, 2022 FOIA request) concerning Harry S. Stonehill, accession number 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, ("Stonehill boxes") originally transferred from the Internal Revenue Service ("IRS") to NARA in 1981. This request supplements the FOIA requests filed on behalf of Mrs. Stonehill on August 15, 2022 (NGC22-757) and on August 23, 2022, and includes but is not limited to [Plaintiff then lists 15 paragraphs of different categories of information, which are more fully laid out in the request.]

*Id.* ¶ 19. On April 24, 2023, Plaintiff served a fourth and a fifth request. *Id.* at 5 n.1. They are almost identical to the first (August 15, 2022) and second (September 14, 2022) requests above. Plaintiff sought to extend the search cut-off date of the earlier requests. On August 11, 2023, Plaintiff served a sixth request to NARA, seeking essentially the same information as her first five requests above. *See* ECF No. 21-4. The fourth, fifth, and sixth requests are not a part of this litigation.

### III.  National Archives and Records Administration

The Federal Records Act is "a collection of statutes governing the creation, management, and disposal of records by federal agencies." *Pub. Citizen v. Carlin*, 184 F.3d 900, 902 (D.C. Cir. 1999); *see* 44 U.S.C. §§ 2101-18, 2901-09, 3101-07, 3301-24. These statutes "establish a unified system for handling the 'life cycle' of federal records—covering their creation, maintenance and use, and eventually their disposal by either destruction or deposit for preservation." *American Friends Serv. Comm. v. Webster*, 720 F.2d 29, 36 (D.C. Cir. 1983).

The Act further sets forth the exclusive means for record disposal. *See* 44 U.S.C. § 3314; *Citizens for Responsibility & Ethics in Washington v. Executive Off. of the President*, 587 F. Supp.

3

2d 48, 53 (D.D.C. 2008). In general, agencies may only dispose of records on terms approved by the Archivist. 44 U.S.C. § 3303; 36 C.F.R. § 1225.10. To efficiently manage the disposition process, agencies create records schedules—negotiated with and approved by NARA—to govern recurring types of records. 44 U.S.C. § 3303(3); 36 C.F.R. §§ 1225.10-1225.26. Records may be deemed temporary or permanent, the former designation leading to destruction after a set period and the latter, to preservation and eventually, transfer to the NARA. 36 C.F.R. §§ 1225.14, 1225.16.

To assist agencies in the management of records before they are eligible for disposal or transfer into the permanent holdings of the National Archives of the United States, NARA is authorized to establish, maintain, and operate records centers for Federal agencies under 44 U.S.C. § 2907 and to approve a records center that is maintained and operated by an agency under 44 U.S.C. § 3103. *See* https://www.archives.gov/frc/toolkit.

If an agency chooses to transfer its records to one of NARA's Federal Records Centers, it can do so either electronically by submitting a transfer request in the Archives and Records Centers Information System ("ARCIS")[1] or by submitting a Standard Form ("SF") 135, Records Transmittal and Receipt,[2] to the respective records center for approval. *See* https://www.archives.gov/frc/toolkit; 36 C.F.R. § 1233.10(c). When an agency transfers records to NARA, the agency—not NARA—maintains legal custody of the records:

---

[1]    NARA implemented ARCIS in 2009. It is the web-based IT system of the Federal Records Centers. The system is the online portal through which an agency can do business with the Federal Records Centers. Starting in 2009, some of the forms identified in this section, such as the SF-135 and OF-11, could be done online through ARCIS. *See* https://www.archives.gov/frc/arcis/about.

[2]    For a sample of a blank SF-135, *see* https://www.archives.gov/files/frc/forms/sf-135.pdf.

4

> Agency records transferred to a NARA Federal Records Center remain in the legal custody of the agency. NARA acts as the agency's agent in maintaining the records. NARA will not disclose the record except to the agency that maintains the record, or under rules established by that agency which are consistent with existing laws.

36 C.F.R. § 1233.18(a).

A very small percentage of all records created across the federal government are permanently valuable records that are ultimately transferred to the National Archives of the United States when they are no longer needed by the agency which created them. *See* https://text-message.blogs.archives.gov/2020/04/14/the-percentage-of-permanent-records-in-the-national-archives-a-1985-article-revisited/ (discussing the volume of records which are preserved in the National Archives). Although an agency retains legal title when it transfers records to one of the Federal Records Centers, the agency loses title when the records become "accessioned." *See* https://www.archives.gov/frc/toolkit ("When permanent records are accessioned into the National Archives, NARA takes legal custody of the records, and in most cases takes physical custody of the records as well. Accessioned records become the property of NARA."). Records can become accessioned by signing a Legal Transfer Instrument in the Electronic Records Archives ("ERA") or by submitting an SF-258. *See* https://www.archives.gov/records-mgmt/bulletins/2012/2012-03.html; *see also* 36 C.F.R. § 1235.22 ("Legal custody of records passes from the agency to NARA when the appropriate NARA official signs the SF-258 acknowledging receipt of the records."). None of the records at issue in this case have been accessioned.

If an employee from the agency wants to retrieve or return a record, the employee can do so either electronically again through ARCIS or by submitting an Optional Form ("OF") 11,

5

Reference Request.[3] *See* https://www.archives.gov/frc/toolkit; 36 C.F.R. § 1233.18(b). This form is like a chain of custody form (although there are other forms with similar information).

## IV. Records Produced

In this case, the searches for the first request—NGC22-757—produced 403 pages (five PDF pages scanned forms, 287 pages of emails, 110 pages of labels, one spreadsheet). Scanlon Decl. ¶ 42. The searches for the second request—NGC22-910—produced 123 pages (sixteen PDF pages of scanned forms, one page of emails, 101 pages of labels, two excel workbooks of five sheets). *Id.* ¶ 43. The third request—NGC23-242—was consolidated with its response to NGC22-757, so NARA did not produce any additional records for NGC23-242. *Id.* ¶ 44. For all three requests, the productions included sixteen OF-11 forms, four SF-135 forms, three workbooks of six sheets containing ARCIS data, 288 PDF pages of email communications, 211 PDF pages of label reports from ARCIS data, and one ARCIS reference request. *Id.* ¶ 45.

## LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the suit under the governing law. *Id.* Although all inferences are taken in a light most favorable to the nonmoving party, a party opposing summary judgment may not rest on allegations or denials from its pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 255-56.

---

[3] For a sample of a blank OF-11, *see* https://www.archives.gov/files/frc/forms/of-11.pdf.

In a FOIA case, summary judgment may be granted "on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 584 (D.C. Cir. 2020) (citation omitted).

## ARGUMENT

As best as government counsel can surmise, there are only two issues remaining in this case. One, whether a shipping label on a box is an agency record under FOIA. Plaintiff desires for NARA to search the outsides of the relevant boxes in this case for shipping labels and take a picture of any found. The government contends that a shipping label is not an agency record and that it does not have to search for them.[4] Two, whether NARA has conducted an adequate search for records overall. The government contends that it has. In the last joint status report, the parties represented that Plaintiff disputed withholdings under Exemptions 5 and 6, but the parties have since resolved those issues.

### I.  A Shipping Label Is Not an Agency Record

"The Supreme Court has set forth two criteria for requested materials to qualify as agency records under FOIA." *Cause of Action Inst. v. Nat'l Oceanic & Atmospheric Admin.*, Civ. A. No. 19-1927 (TSC), 2023 WL 3619345, at *3 (D.D.C. May 24, 2023). "First, an agency must either create or obtain the requested materials." *Id.* (quoting *Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 144 (1989)). "Second, the agency must be in control of the requested materials at the time the FOIA request is made." *Id.* (quoting *Tax Analysts*, 492 U.S. at 145). "The burden is on

---

[4] Without conceding that a shipping label is an agency record, NARA performed a search of the relevant boxes and discovered two labels. In hopes of resolving this issue without needing to brief it on summary judgment, NARA offered to take a picture of these two labels and send them to Plaintiff. Counsel for Plaintiff declined the offer and indicated instead that he would rather brief the issue.

the agency to demonstrate, not the requester to disprove, that the materials sought are not 'agency records.'" *Id.* (quoting *Tax Analysts*, 492 U.S. at 142 n.3).

To determine whether an agency "controls" the records sought, the D.C. Circuit looks at four factors:

(1) the intent of the document's creator to retain or relinquish control over the records;

(2) the ability of the agency to use and dispose of the record as it sees fit;

(3) the extent to which agency personnel have read or relied upon the document; and

(4) the degree to which the document was integrated into the agency's record system or files.

*Cause of Action Inst. v. Off. Of Mgmt. & Budget*, 10 F.4th 849, 855 (D.C. Cir. 2021) (quoting *Burka v. Dep't of Health & Hum. Servs.*, 87 F.3d 508, 515 (D.C. Cir. 1996)). The ultimate question of whether a document is an agency record is akin to a totality of the circumstances test. *Id.* (citing *Bureau of Nat'l Affairs, Inc. v. Dep't of Just.*, 742 F.2d 1484, 1490, 1492 (D.C. Cir. 1984)). The third factor—the degree to which an agency has used the document—is usually decisive.[5] *Danik v. Dep't of Just.*, 463 F. Supp. 3d 1, 7 (D.D.C. 2020) (citing *Jud. Watch, Inc. v. Fed. Hous. Fin. Agency*, 646 F.3d 924, 927-28 (D.C. Cir. 2011)).

Here, a shipping label is not an agency record under FOIA. As explained in the declaration of Joseph A. Scanlon, NARA relies on several documents to perform its functions. For example, before transferring records to a Federal Records Center, the originating agency can submit an SF-135. Scanlon Decl. ¶ 9. Interestingly, an SF-135 contains the mailing information of the

---

[5] Although the D.C. Circuit has consistently found that "use is the decisive factor," and "use" appears in the second factor, not the third, the D.C. Circuit was referencing the third factor. *See Jud. Watch*, 646 F.3d at 927.

originating agency and the Federal Records Center where the records are being sent to. *See* https://www.archives.gov/files/frc/forms/sf-135.pdf. If an agency wants to request one of its records stored at a Federal Records Center, or return records to a Federal Records Center, the agency can complete an OF-11. Scanlon Decl. ¶ 11. An OF-11 also contains the mailing information of the agency requesting or returning its records to a Federal Records Center. *See* https://www.archives.gov/files/frc/forms/of-11.pdf. Whenever an agency ships records to a Federal Records Center—as opposed to hand delivery, electronic delivery, or some other form of delivery that does not create a label—NARA has no use for the shipping label to perform its agency functions. The label is used by FedEx, UPS, or USPS to deliver the records, and that is it.

If the Court were to apply the four *Burka* factors to shipping labels, it could easily see that a shipping label is not an agency record under FOIA. NARA has no intent to retain or use a shipping label if one exists. Instead, if NARA needs mailing information about an agency, it is contained in a system like ARCIS. NARA does not rely on shipping labels to perform its mission; they are what UPS and FedEx use to perform theirs. If NARA did rely on shipping labels to perform its mission, the agency would crumble because, as explained above, not every agency sends records to NARA via FedEx or UPS, so not every box contains a shipping label. Instead, to organize records, NARA uses ARCIS Transfer Numbers, not shipping labels. And although address information may be included in a system like ARCIS, NARA is not taking pictures of the labels and uploading them, so shipping labels have not been integrated into an agency record system.

Although it has been difficult to find case law about whether a shipping label is an agency record under FOIA, the two cases that government counsel has been able to find indicate that a shipping label is not an agency record under FOIA:

9

> We find that the District Court reasonably interpreted its own May 29, 1981 order as envisioning use of the labels for attachment to ballot envelopes to be posted in connection with the election, and as precluding other use. The District Court then properly concluded that the Board's transitory possession of the labels, limited to the one-time, attach-and-post use required by the court order, did not constitute "control" of the labels by the Board, and that the labels were therefore not "agency records" subject to disclosure under the Freedom of Information Act.

*Int'l Bhd. Of Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Nat'l Mediation Bd.*, 712 F.2d 1495, 1496 (D.C. Cir. 1983) (citations omitted); *see also Cal-Almond, Inc. v. Dep't of Agric.*, 960 F.2d 105, 108-09 (9th Cir. 1992) ("[U]nder FOIA, Cal-Almond is entitled only to an injunction ordering production of the names and addresses of almond growers that USDA still has. USDA no longer has the list of Blue Diamond growers because that list was provided to USDA on mailing labels and was used up in conducting the referendum. Absent a showing that the government has improperly destroyed 'agency records,' FOIA does not require these records to be recreated." (citation omitted)).

For the reasons above, the Court should find that shipping labels are not agency records under FOIA.

**II.     NARA Has Performed an Adequate Search**

"To prevail on summary judgment, an 'agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested,' which it can do by submitting '[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched.'" *Shapiro v. Dep't of Just.*, 40 F.4th 609, 612-13 (D.C. Cir. 2022) (citations omitted). "In a FOIA case, a district court is not tasked with uncovering 'whether there might exist any other documents possibly responsive to the request,' but instead, asks only whether 'the search for [the requested] documents was adequate.'" *Id.* at 613 (citation omitted). "[T]he fact that a particular document was not found does

10

not demonstrate the inadequacy of a search." *Boyd v. Dep't of Just.*, 475 F.3d 381, 391 (D.C. Cir. 2007). "There is no requirement that an agency search every record system[,]" only the systems that are "reasonably expected to produce the information requested." *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

Here, a staff member within the FOIA office of the Office of General Counsel coordinated the search for the responsive records with records custodians. Scanlon Decl. ¶ 22. In all three FOIA requests, the Plaintiff asked for records associated with one accession number and three transfer numbers,[6] all for records transferred to the Washington National Records Center. *Id.* ¶ 23. The Washington National Records Center maintains the following records regarding transfer, storage, reference requests (providing access to agencies' records), record pick-up and delivery, and refiles of customer agency records:

    a.    SF-135 forms (records transmittal and receipt form);

    b.    OF-11 forms (reference requests); and

    c.    ARCIS data on refiles and storage location.

---

[6] A transfer number (previously an "accession number" prior to the deployment of ARCIS) is a code assigned to sets of records to be transferred to an FRC when the initial transfer request (SF-135) is created. The primary identifier or data point used to locate information at NARA FRCs is the "transfer number" (or accession number). This number identifies the Record Group (originating agency), fiscal year of transfer, and a sequential number to differentiate one transfer from another. Various alpha prefixes and/or suffixes may be applied to this number to indicate which record center a transfer is located or a type of transfer (physical or electronic).

It is important to note that while Plaintiff asked for records associated with one accession number in her request, those records were not, in fact, "accessioned" in the sense that they have become permanent NARA records. The word "accession" previously had two different meanings for NARA. One meaning is when permanent records are transferred to the holdings of the National Archives and become the legal custody of NARA. The other is when, prior to the deployment of ARCIS, the Federal Records Centers used the term to mean a transfer. The term "accession" is now reserved exclusively for records that have become permanent holdings of the National Archives. None of the records here have been "accessioned" in the sense that they are the permanent records of NARA, for which NARA has legal custody.

11

*Id.* ¶ 24. NARA interpreted the Plaintiff's three requests to include NARA's records involving the transfer and storage of records boxes associated with the transfer numbers and accession number provided by the Plaintiff. *Id.* ¶ 26. NARA's search for responsive records included:

   a. Searching records and emails of Washington National Records Center employees;

   b. Searching ARCIS data on these transfers;

   c. Searching a separate server maintained for searching and retrieval of scanned SF-135 forms created prior to ARCIS;

   d. Searching file cabinets at the Washington National Records Center that contain hard-copy forms where the contents of the documents may not have been transferred to ARCIS; and

   e. Searching electronic storage drives where employee working files are kept.

*Id*. NARA requested management and front-line staff at the Washington National Records Center gather potentially responsive records for review related to the boxes associated with the records transfer numbers and accession number, connected SF-135s, OF-11s, and all records related to the transfer of these boxes. *Id.* ¶ 27. These individuals were required to search their paper records and electronic files stored in Google drive, other drives, or anywhere else available to them for any documents that may be responsive. *Id.* In response to NGC22-910 and NGC23-241, individuals were also required to search emails for responsive records, in addition to those paper records and electronic files previously described. *Id.* The individuals performed these searches. *Id.*

NARA also searched the ARCIS database, which allows the user to search for any reference requests or refiles after the deployment of the ARCIS system in 2009 using a variety of search options, such as by record transfer number. *Id.* ¶ 28. ARCIS also has reporting functions that allow for the display of targeted data-sets, for example "all recorded refiles for

12

record group 058 for the year 2015." *Id.* The NARA declaration further shows the search terms that NARA used. *Id.* ¶ 29.

Because the records transfers were made only to the Washington National Records Center, it is the only place where responsive information is likely to be located. *Id.* ¶ 30. Washington National Records Center employees have access to and requisite search permissions for ARCIS, which is the primary tool for tracking status and location of records at the Washington National Records Center, and access to the Washington National Records Center file cabinets and stack areas that could be searched for physical records. *Id.* Washington National Records Center employees also have access to electronic storage drives and their email repositories to search for relevant information. *Id.*

Further, in 2015, Washington National Records Center employees also searched the facility's records for information on accession number 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, the same subject matter as NGC22-757 in this case, in response to the Plaintiff's FOIA request to the IRS. *Id.* ¶ 31. Specifically, NARA was asked to locate information on:

a. The names of any individual who had access to the 86 boxes of IRS Documents related to Harry S. Stonehill discovered in June 2001 in the [federal storage facility] in Suitland, Maryland.

b. The logs or any document containing the names of any individual who had access to the [federal storage facility] in Suitland, Maryland.

*Id.* Also, in 2021, IRS again asked Washington National Records Center employees to search for similar information in connection with this accession number in response to the Plaintiff's FOIA request to IRS, which was then in litigation. *Id.* ¶ 32. For the instant case, Washington National Records Center employees were most likely to have copies of previously produced material from the prior FOIA request involving the subject matter of the requests in this case as well as any newly created material that could be responsive to the requests. *Id.* If any NARA

13

email correspondence involving these transfers exists, the emails of Washington National Records Center employees were most likely to contain responsive material, and these records were searched. *Id.*

Although the adequacy of a search is determined not by what is found but by what was done, for all three requests, the productions included sixteen OF-11 forms, four SF-135 forms, three workbooks of six sheets containing ARCIS data, 288 PDF pages of email communications, 211 PDF pages of label reports from ARCIS data, and one ARCIS reference request. *Id.* ¶ 45. All files reasonably expected to contain the requested records were searched in response to the Plaintiff's FOIA requests. *Id.* ¶ 46. There is nowhere else to search.

For the reasons above, the Court should find that NARA has performed an adequate search under FOIA.

\*   \*   \*

Case 1:22-cv-03391-CJN   Document 21   Filed 08/17/23   Page 20 of 20

**CONCLUSION**

For the reasons above, the Court should enter summary judgment for NARA.

| | |
|---|---|
| Date: August 17, 2023<br>Washington, DC | Respectfully submitted,<br><br>MATTHEW M. GRAVES, D.C. Bar. #481052<br>United States Attorney<br><br>BRIAN P. HUDAK,<br>Chief, Civil Division<br><br>By: */s/ Sam Escher*<br>SAM ESCHER, D.C. Bar #1655538<br>Assistant United States Attorney<br>601 D Street, N.W.<br>Washington, D.C. 20530<br>(202) 252-2531<br>Sam.Escher@usdoj.gov<br><br>*Attorneys for the United States of America* |

15