UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PAULINE DALE STONEHILL,

      Plaintiff,

      v.

NATIONAL ARCHIVES AND RECORDS
ADMINISTRATION,

      Defendant.

Civil Action No. 22-3391 (CJN)

## **DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS**

### **1998 FOIA Request No. 99-12084**

1.     On July 10, 1998, Stonehill filed FOIA Request No. 99-12084 with the IRS seeking "all records, files, hearing transcripts, notes or memoranda of meetings or telephone conversations, and other data in your possession, custody, control pertaining to Robert P. Brooks [and] Harry S. Stonehill[.]"

     **Response:** This assertion is immaterial, and Plaintiff has not properly supported the assertion. *See* Fed. R. Civ. P. 56(c)(1); LCvR 7(h)(1).

2.     Stonehill also filed FOIA requests with the State Department, the Federal Bureau of Investigation ("FBI"), the Department of Justice ("DOJ"), and the CIA on July 10, 1998.

     **Response:** This assertion is immaterial, and Plaintiff has not properly supported the assertion. *See* Fed. R. Civ. P. 56(c)(1); LCvR 7(h)(1).

3.     On December 11, 1998, the IRS produced **five documents.** According to IRS Disclosure Officer Steven Flesner ("Flesner"), these documents were located following "a thorough search of all available records under the jurisdiction of the Assistant Commissioner (International)." Complaint Ex. 1(a).

**Response:** This assertion is immaterial.

4.    Flesner advised Stonehill's counsel on January 6, 1999, that other than the few documents that had been provided in full, there "were no other documents under our jurisdiction responsive to your request" and if additional documents "exist, they are not in [IRS] possession at this time." Letter from S. Flesner to R. Heggestad (January 6, 1999), Complaint Ex. 1(b).

      **Response:** This assertion is immaterial.

5.    Flesner recommended that because "this case was litigated by the Department of Justice for a number of years…. further correspondence concerning these records" should be directed "to the Department of Justice under a Freedom of Information Act request."

      **Response:** This assertion is immaterial.

6.    On January 8, 1999, Stonehill submitted a new FOIA request to DOJ which included the related correspondence from Flesner.

      **Response:**  This assertion is immaterial, and Plaintiff has not properly supported the assertion. *See* Fed. R. Civ. P. 56(c)(1); LCvR 7(h)(1).

7.    On January 26, the FOIA request was forwarded by the Justice Management Division to the Executive Office for U.S. Attorneys.

      **Response:**  This assertion is immaterial, and Plaintiff has not properly supported the assertion. *See* Fed. R. Civ. P. 56(c)(1); LCvR 7(h)(1).

8.    On March 5, 1999, DOJ Senior Counsel for the FOIA/PA Unit for the EOUSA responded that the requested Stonehill records had been destroyed.  Letter from B. Gay to R. Heggestad (March 5, 1999), Complaint Ex. 1(c).

      **Response:** This assertion is immaterial.

9.      On July 31, 1999, Stonehill appealed the IRS decision that claimed responsive documents to Stonehill's FOIA request could not be located.

      **Response:** This assertion is immaterial, and Plaintiff has not properly supported the assertion. *See* Fed. R. Civ. P. 56(c)(1); LCvR 7(h)(1).

10.     On October 29, 1999 IRS Chief of Disclosure Litigation Donald Squires ("Squires") denied Stonehill's appeal stating that "to the best of our knowledge, these documents could not be located, and through discussions with appropriate Service employees, we believe that these documents indeed could not be found." Letter from D. Squires to R. Heggestad (October 29, 1999), Complaint Ex. 1(d).

      **Response:** This assertion is immaterial.

11.     On March 15, 2001, Stonehill's undersigned counsel contacted the original IRS Disclosure Officer, Steven Flesner, and asked him why IRS documents produced by the Tax Division were not also available in IRS files. Fletcher disclosed to Stonehill's counsel that the documents which were responsive to Stonehill's 1998 FOIA request were located and still available at the Office of the Associate Chief Counsel, International Operations Branch.

      **Response:** This assertion is immaterial, and Plaintiff has not properly supported the assertion. *See* Fed. R. Civ. P. 56(c)(1); LCvR 7(h)(1).

12.     On March 15, 2001, Stonehill renewed his request for documents responsive to the 1998 FOIA request with the Manager of the Headquarters Disclosure Office, Catherine Campbell ("Campbell").  Letter from R. Heggestad to C. Campell (March 15, 2001), Complaint Ex. 4(a).

      **Response:** This assertion is immaterial.

13.     Stonehill's counsel informed Campbell that IRS documents responsive to the 1998 FOIA request could be located and should be readily assessable in the Office of the Associate Chief

Counsel, International Operations Branch. Complaint EX. 4 (b) March `16, 2001 Letter from R. Heggestad to C. Campbell.

> **Response:** This assertion is immaterial.

### IRS Discovery of 8 Boxes of Stonehill Documents

14.    On May 18, 2001, Carroll Field ("Field"), a Tax Specialist at the IRS Headquarters Disclosure Office, advised Stonehill's counsel that the 2001 FOIA request was being processed and that **8 boxes** of documents related to the Stonehill case had been located in the Associate Chief Counsel's Office.

> **Response:** This assertion is immaterial, and Plaintiff has not properly supported the assertion. *See* Fed. R. Civ. P. 56(c)(1); LCvR 7(h)(1).

15.    Richard Fultz ("Fultz"), IRS Field Special Counsel in the Office of the Associate Chief Counsel (International) was assigned to "coordinate and review documents responsive to [Stonehill's] 1998 and 2001 FOIA requests." Fultz Affidavit, *Stonehill v. IRS* (March 16, 2007) par. 3., Complaint Ex. 5(a).

> **Response:** This assertion is immaterial.

16.    Fultz helped Field collect, review and assert exemptions applicable in responding to Stonehill's 1998 and 2001 FOIA requests.

> **Response:** This assertion is immaterial, and Plaintiff has not properly supported the assertion. *See* Fed. R. Civ. P. 56(c)(1); LCvR 7(h)(1).

17.    The IRS produced the eight boxes of newly discovered documents to Stonehill sequentially between 7/23/01 and 10/01/01. Letter from C. Field to R. Heggestad (November 26, 2002), Complaint Ex. 5(b).

> **Response:** This assertion is immaterial.

## Discovery of 86 boxes of Stonehill Documents

18.     On May 29, 2001, Stonehill filed a motion to stay the decision in the Rule 60(b) proceeding pending the production and review of the newly discovered 8 boxes of IRS documents in the Chief Counsel's office.

     **Response:** This assertion is immaterial.

19.     During the review of Stonehill documents in June 2001, IRS attorney Mae J. Lew ("Lew") reported that she came upon Form 135 (Records Transmittal and Receipt), dated February 12, 1981 which reflected that 86 boxes, with accession number "58-81-24" were sent by the IRS to the Washington National Records Center, Suitland, Maryland, 1981. Plaintiff's Cross Motion for Summary Judgment Ex. 1(o).

     **Response:** This assertion is immaterial.

20.     Fultz and Lew went to the records center to view a sample of contents of boxes to determine whether the boxes contained documents responsive to Stonehill's FOIA request.

     **Response:** This assertion is immaterial.

21.     On August 28, 2001, the District Court denied Stonehill's motion to stay the proceedings pending the production of documents from the 8 boxes of IRS Stonehill documents; the District Court also denied Stonehill's Rule 60(b) motion.

     **Response:** This assertion is immaterial, and Plaintiff has not properly supported the assertion. *See* Fed. R. Civ. P. 56(c)(1); LCvR 7(h)(1).

22.     Fultz did not notify Stonehill that 86 boxes of IRS Stonehill related documents had been located at the IRS's Washington Records Center in Suitland, Maryland ("the Records Center") until October 16, 2001, after the motion to stay and Stonehill's Rule 60(b) motion had been denied. Fultz Affidavit, *U.S. v. Stonehill* (June 5, 2005) at par. 5, Complaint Exhibit 6(a). Letter from R. Fultz to R. Heggestad (October 16, 2001), complaint Ex 6(b).

**Response:** This assertion is immaterial.

23.     The IRS produced the eight boxes of newly discovered documents to Stonehill sequentially between 7/23/01 and 10/01/01. *Id*. Letter from C. Field to R. Heggestad (November 26, 2002), Tab I, Complaint Ex. 5(b).

**Response:** This assertion is immaterial.

24.     In his June 5, 2005 Declaration, Fultz stated that "Many of the **84** boxes had numbers marked on the outside indicating they may have been part of a grouping of **86** boxes."

**Response:** This assertion is immaterial.

25.     In his Declaration dated March 16, 2007,[1] submitted on behalf of the IRS in Stonehill's FOIA litigation, Fultz stated that only "**82** boxes of additional documents related to the investigation of Messrs. Stonehill and Brooks were discovered in a Federal Records Center in Suitland, Maryland" although "the boxes have written markings indicating there were a total of **84**…"

**Response:** This assertion is immaterial.

26.     The boxes of newly discovered documents were transported from the Federal Records Center to Washington, D.C. approximately 20 boxes at a time, and produced in part to Stonehill between November 20, 2001 and October 2, 2002.

**Response:** This assertion is immaterial, and Plaintiff has not properly supported the assertion. *See* Fed. R. Civ. P. 56(c)(1); LCvR 7(h)(1).

27.     On January 31, 2002, Stonehill appealed the District Court's decision denying the Rule 60(b) motion to the Ninth Circuit Court of Appeals ("Ninth Circuit").

---

[1]     Fultz Decl. March 16, 2007, Compl. Ex. 5(a)

**Response:** This assertion is immaterial, and Plaintiff has not properly supported the assertion. *See* Fed. R. Civ. P. 56(c)(1); LCvR 7(h)(1).

28.    On November 14, 2002, after the completion of the review of the 86 IRS Stonehill boxes and shortly before oral argument in the Ninth Circuit, Field notified Stonehill's counsel that boxes 17 and 83 were "missing from the Federal Records Center."[2]

**Response:** This assertion is immaterial.

29.    The "General Index for the contents of the boxes for the Stonehill and Brooks cases" described Box 17 as containing the "Chief Counsel Criminal Tax Division attorney notes and papers for the review of the Stonehill and brooks cases in preparation of the Chief Counsel's memorandum dated May 20, 1966."[3]

**Response:** This assertion is immaterial. Additionally, the general index that Plaintiff cites, which can be found at ECF No. 11-9 at 6, does not support the statement she made. *See* Fed. R. Civ. P. 56(c)(1).

30.    During the eight years following the Ninth Circuit remand, documents were slowly produced during the course of IRS-FOIA litigation and as a result of limited discovery ordered by the District Court in the Rule 60(b) proceeding.

**Response:** This assertion is immaterial, and Plaintiff has not properly supported the assertion. *See* Fed. R. Civ. P. 56(c)(1); LCvR 7(h)(1).

---

[2]    Letter from C. Field to R. Heggestad (November 14, 2002), Compl. Ex. 8(a)

[3]    Compl. Ex. 8(b) - General Index for the contents of the boxes for the Stonehill and Brooks cases

**"Lost" Criminal Division Files**

31.     On October 3, 2000, November 8, 2000 and November 29, 2000, DOJ Tax Division attorneys in the Rule 60(b) proceeding submitted Stonehill related documents which included IRS documents obtained from Criminal Division files.

       **Response:** This assertion is immaterial, and Plaintiff has not properly supported the assertion. *See* Fed. R. Civ. P. 56(c)(1); LCvR 7(h)(1).

32.     On February 8, 2001 Stonehill requested that the Chief of Special Litigation for the Tax Division, provide copies of all documents from Criminal Division files that had been made available to DOJ trial attorneys in the related Rule 60(b) Stonehill case.[4]

       **Response:** This assertion is immaterial.

33.     On February 9, 2001, the Tax Division advised Stonehill's counsel that in order to obtain all documents from the files, a "Privacy Act or FOIA request for Criminal Division files would have to made to the Criminal Division."[5]

       **Response:** This assertion is immaterial.

34.     On February 12, 2001, Stonehill filed a new FOIA request with the Chief of the Criminal Division FOIA Unit, Thomas McIntyre ("McIntyre"), seeking copies of all documents relating to Stonehill. (Ex. 3(c)).

       **Response:** This assertion is immaterial.

35.     McIntyre advised Stonehill on March 20, 2001 that because the documents produced to DOJ, which included IRS documents, were marked confidential, they were stored "in a safe" at the Criminal Division. Compl. Exhibit 3(d).

---

[4]     Compl. Ex. 3(a)

[5]     Compl. Ex. 3(b)

**Response:** This assertion is immaterial.

36.    On April 3, 2001, DOJ Tax Division attorney Seth Heald ("Heald") confirmed that the documents submitted to the Court in the Rule 60(b) proceeding and provided to Stonehill were obtained from the files in the Criminal Division safe. Letter from S. Heald to R. Heggestad (April 3, 2001) Compl. Ex. 3(e).

**Response:** This assertion is immaterial.

37.    Stonehill's request for expedited processing of the February 12, 2001 FOIA request was denied by the Criminal Division

**Response:** This assertion is immaterial.

38.    On February 6, 2002, almost one year after Stonehill's FOIA request had been filed with the Criminal Division, McIntyre reported that the Stonehill documents stored in the safe were now suddenly "lost" and could no longer be found in the Criminal Division safe or elsewhere at the Criminal Division. Letter from T. McIntyre to R. Heggestad (Feb. 6, 2002), Compl. Ex. 3 (f).

**Response:** This assertion is immaterial.

## 2014 and 2018 FOIA Requests Related to IRS Lost Boxes

39.    On July 10, 2014, Bethany McLean ("McLean"), a representative of the news media, filed an FOIA request on behalf of Pauline Dale Stonehill ("Plaintiff") for all records and correspondence relating to the storage and review of 86 boxes of IRS Stonehill records located at the Washington Records Center in Suitland Maryland.

**Response:** This assertion is immaterial, and Plaintiff has not properly supported the assertion. *See* Fed. R. Civ. P. 56(c)(1); LCvR 7(h)(1).

40.     After 11 requests for extensions spanning almost three years, on March 31, 2017, the IRS denied the request claiming Mrs. Stonehill did not have authority to access information about her husband's tax matters.[6]

        **Response:** This assertion is immaterial.

41.     On August 28, 2017 the IRS denied Mclean's appeal and closed the file.[7]

        **Response:** This assertion is immaterial.

42.     On September 28, 2018, the undersigned counsel filed a second FOIA Request on behalf of Plaintiff, for all records and correspondence discussing or related to the discovery and review of the 8 boxes of Stonehill documents located in the IRS Chief Counsel's office and to the discovery, transfer and review of the 86 boxes of documents located at the Federal Records Center in Suitland, Maryland.[8]

        **Response:** This assertion is immaterial.

43.     On October 19, 2018, the IRS issued a final response denying Mrs. Stonehill's September 28, 2018 FOIA stating that she was not authorized to have access to confidential tax records.[9] The undersigned counsel appealed the IRS "final response" on December 12, 2018.

        **Response:** This assertion is immaterial.

---

[6]     Compl. Ex. 9(a) March 31, 2017 from P. Tompkins to B. McLean

[7]     Compl. Ex. 9(b) - August 28, 2017 letter from T. Carrillo to B. McLean

[8]     Compl. Ex. 10(a) - September 29, 2018 FOIA Request from R. Heggestad on behalf of P. Stonehill

[9]     Compl. Ex. 10(b)

44.    On December 6, 2019, Plaintiff initiated an FOIA lawsuit, seeking declaratory and injunctive relief requiring the IRS to produce all non-exempt records responsive to Plaintiff's September 28, 2018, FOIA request. (Dkt. 1) *Stonehill v. IRS,* Civ. Action No. 1:10- cv-03644.

    **Response:** This assertion is immaterial.

45.    The unredacted documents released in *Stonehill v. IRS* between July 1, 2021, and October 29, 2021 show that Boxes 17 and 83 were not lost while the boxes were stored at the WNRC prior to 2001 and that the boxes 17 and 83 are currently stored at the WNRC in their designated locations.[10]

    **Response:** This assertion is immaterial.

46.    In September 2021, Christopher Pinkey, WNRC Acting Director, informed Helene Newsome ("Newsome"), IRS Office of Chief Counsel, that he "directed that a manual check be conducted on each numbered box in this record set: and that "Boxes 17 and 83, as well as every other box in this records set, were stored in their appropriate locations at the WNRC."[11]

    **Response:** This assertion is immaterial.

47.    Pinkey also reported to Newsome that "the WNTC has no hard copy record, or record in ARCIS, indicating that Boxes 17 and 83 were ever missing from the WNRC."[12]

    **Response:** This assertion is immaterial.

---

[10]    Cross Motion for Summary Judgment Compl. 10(c) p. 19 par. 76

[11]    Newsome Second Decl., March 31, 2022 at par. 76. Compl. Ex. 10(c)

[12]    *Id.* at par. 76

48.    An Excel spreadsheet prepared by Pinkey for Newsome which identifies the dates of IRS refiles (or returns) confirms that the IRS had possession of the missing boxes 17 and 83 between 2001 and 2013 when the boxes were returned to the WNRC.[13]

  **Response:** This assertion is immaterial.

49.    The IRS returned **Box 83** to the WNRC on 12/8/2009.[14]

  **Response:** This assertion is immaterial.

50.    The IRS returned **Box 83** to the WNRC a second time on 5/30/2013, at the same time Box 17 was returned to the WNRC.[15]

  **Response:** This assertion is immaterial.

51.    Pinkey informed the IRS that "most if not all of the boxes were charged out to individuals associated with the Department of Justice Tax Division."[16]

  **Response:** This assertion is immaterial.

### August 15, 2022 FOIA Request

52.    On August 15, 2022, the undersigned attorney filed an FOIA request with NARA on behalf of Mrs. Stonehill for all records and documents, related to storage, transfer and review of 86 boxes of documents concerning Harry S. Stonehill, accession number 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, ("Stonehill boxes") originally transferred from the Internal Revenue Service ("IRS") to NARA in 1981.[17]

  **Response:** Undisputed.

---

[13]    *See* Compl. Ex. 11 at Att. 3 STON01086-1089

[14]    *Id.*

[15]    *Id.*

[16]    Compl. Ex. 11 Att. 4. STONO 00501 8/3/2015 email from C. Pinkey to G. Lassiter

[17]    Compl. Ex. 11-Att. 1

**September 14, 2022 NARA FOIA Request**

53.     On September 14, 2022, the undersigned counsel submitted an FOIA request to NARA on behalf of Mrs. Stonehill requesting for all records and documents, including electronic correspondence, during the time period January 1, 1998 thru August 31, 2022, related to storage, transfer and review of records related to Harry S. Stonehill ("Stonehill") contained in Transfer 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, Transfer 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 (DJ No. 46-16-704) and Transfer 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 (DJ No. 46-18-704 and 46-16-704) referenced in an April 5, 2017 email from Alfred Greene, NARA Supervisory Archives Specialist to Everett Gibbons, Criminal Division Records Management.[18]

        **Response:** Undisputed.

54.     On February 2, 2023, NARA produced Form 135 confirming that 89 boxes of Stonehill IRS litigation case files were transferred from Annette Mitchell (IRS) to FRC-WNRC transfer No. 058-1981-0024, with an inclusive start date 06/01/1981 to an inclusive end date 06/30/1981 with a disposition date of 10/01/2024.[19]

        **Response:** Undisputed.

55.     On February 5, 2023, the undersigned counsel submitted an FOIA request to NARA on behalf of Mrs. Stonehill requesting all records and documents, including electronic correspondence, during the time period January 1, 1981 thru February 5, 2023, related to storage, transfer and review of 89 boxes of documents (the reference to 89 boxes includes the 86 boxes described in Mrs. Stonehill's August 15, 2022 FOIA request) concerning Harry S. Stonehill,

---

[18]     Compl. Ex. 12-g

[19]     Compl. Ex. 13-a

accession number 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, ("Stonehill boxes") originally transferred from the Internal Revenue Service ("IRS") to NARA in 1981.[20]

       **Response:** Undisputed.

56.    On March 15, 2023, NARA issued a Final Response informing the Plaintiff that NARA "did not locate any materials responsive to your request that have not been previously deemed responsive to your earlier request of August 15, 2022.[21]

       **Response:** Undisputed.

57.    According to handwritten notations on the IRS General Index of the Stonehill boxes,[22] Box 17 was originally part of Box 53, which was described as containing "Chief Counsel Criminal Tax Division attorney notes and papers for the review of the Stonehill and Brooks cases in preparation of the Chief Counsel's memorandum dated May 20, 1966."

       **Response:** This assertion is immaterial.

58.    The May 20, 1966 memorandum prepared by IRS Chief Counsel Lester Uretz ("Uretz"), described the activities of CIA agent Joseph McGee, who allegedly participated in illegal wiretapping by the NBI, and "the illegal search and seizure by the Philippine National Bureau of Investigation ("N.B.I.) and the alleged participation by United States personnel."[23] (Compl. Ex. 8(b)). The Memorandum concluded, in part, that:

    (1)    "it appears possible that a Federal Court may evaluate the N.B.I. search and seizure de novo; hold that it was illegal (applying United States Standard); and determine that there was sufficient

---

[20]    Compl. Ex. 13-b

[21]    Compl. Ex. 13-c

[22]    Ex. 8(b) General Index of Stonehill IRS boxes

[23]    May 20, 1966 memorandum, Ex. 7

          participation by United States personnel to warrant suppression of evidence obtained;"[24]

(2)    if a specific items approach was used, rather than a net worth theory to compute tax liability, the "computations revealed that either de minimus or no tax deficiencies would be involved as to each year;"[25] and

(3)    the activities of CIA agent Joseph McGee "are particularly sensitive." e.g. "It appears probable that a court would hold that the defense would be entitled to interrogate Mr. McGee. Thus, if executive privilege is claimed the court would probably not allow the Government to proceed with the case recommended herein."[26]

**Response:** These assertions are immaterial.

59.    The National Washington Records Center ("WNRC") confirmed that Boxes 17 and 83 are currently in their designated locations and there is no record that the Boxes have ever been lost.[27]

**Response:** This assertion is immaterial.

60.    WNRC records confirm that the IRS sent 86 boxes of Stonehill records to the WNRC in 1981.[28]

**Response:** This assertion is immaterial.

61.    The 86 boxes, which included Boxes 17 and 83, were returned to the IRS in 2001, a year before the IRS informed Stonehill that Boxes 17 and 83 were lost. The 86 Stonehill boxes were

---

[24]    *Id.* at 22

[25]    *Id.* at 27

[26]    *Id.* at 29

[27]    The IRS requested information from the WNRC sought by Mrs. Stonehill in *Stonehill v. IRS.* On March 31, 2022, Helene Newsome ("Newsome") submitted a Declaration reporting the results of her search for documents responsive to Mrs. Stonehill's FOIA request. *See* Newsome Decl. Compl. Ex. 10(c).

[28]    Ex. 8(c)

transferred to the Tax Division, at least by 2003, before they were returned to the WNRC beginning in 2009 through 2017.[29]

    **Response:** This assertion is immaterial.

62.    The IRS returned box 83 to the Records Center on 12/8/2009,[30] approximately one year after the Court issued an opinion in *Stonehill v. IRS* and shortly after the March 6, 2009, D.C. Court of Appeals decision affirming the District Court's opinion.

    **Response:** This assertion is immaterial.

63.    The IRS/Tax Division) returned Box 17 to the Records Center on 5/15/2013, two years after the Ninth Circuit Court of Appeals decision affirming the District Court's decision denying Stonehill's Rule 60(b)(6) motion.[31]

    **Response:** This assertion is immaterial.

64.    Box 83 was returned a second time on May 30, 2013.[32]

    **Response:** This assertion is immaterial.

65.    All of the IRS boxes, including the missing Boxes 17 and 83, were picked up from the DOJ Tax Division by NARA staff.[33]

    **Response:** This assertion is immaterial.

---

[29]    Ex. 8(d)

[30]    Because NARA's ARCIS system was not implemented until 2009, there is no refile data available prior to that time. Ex 8(d)

[31]    Ex. 8(d). This claim was also repeated in numerous pleadings filed by the government in both Proceedings.

[32]    Ex. 8(d)

[33]    Ex. 8(e)

66.     Beginning in 2022, Plaintiff Pauline Dale Stonehill ("Stonehill') filed Freedom of Information Act ("FOIA") requests[34] to NARA for records relating to the "storage, transfer and review" of records contained in 86 boxes of Internal Revenue Service ("IRS") Stonehill documents initially transferred to NARA in 1981 (August 15, 2022 FOIA Request) and to Stonehill Criminal Division records initially transferred to NARA in 1984 (September 14, 2022 FOIA Request)."

        **Response:** Undisputed.

67.     During NARA's production of documents in response to Mrs. Stonehill's August 15, 2022 FOIA request, NARA produced a Form 135 which stated that 89 (not 86) boxes of Stonehill records had been transferred to NARA.

        **Response:** Undisputed.

68.     Mrs. Stonehill subsequently filed a third FOIA request on February 4, 2023 FOIA to update the previous request related to 86 boxes to include all 89 boxes.

        **Response:** Undisputed.

69.     On March 15, 2023, NARA reported that "the apparent discrepancy between the number of boxes notated on SF-135's received by you in response to your earlier FOIA requests is explained as being due to materials not fitting back into their original boxes after use.[35]

---

[34]    During NARA's production of documents, Stonehill received a form 135 which listed a total of 89 boxes sent to the WNRC Ex. 1(j). On February 4, 2023 refiled her FOIA Requests to include 89 (rather than 86) boxes.

[35]    Staff at WNRC informed us that:

        The additional boxes were added to the transfer in 2015 and 2018 as part of the accretion process. All the files belonging to box 77 could not fit in the original box so a box 77A and 77B were created on 4/16/2015. The same thing occurred for box 36 which then created box 36A. So the 3 additional boxes in the most recent SF-135 is a result of additional files not fitting in the original boxes which called for the creation of boxes 77A, 77B, and 36A. Ex 1(k)

**Response:** Undisputed.

70.    On April 24, 2023, Mrs. Stonehill filed two FOIA requests to update the time periods covered for the FOIA to extend the search cut off dates for the earlier request through April 24, 2023.

**Response:** Undisputed but also immaterial. These FOIA requests are not a part of this lawsuit.

71.    Finally, on August 1, 2023, Mrs. Stonehill filed a sixth FOIA request to obtain information related to communications between IRS and Tax Division counsel and NARA counsel discussing the 86 IRS boxes and the ownership of shipping labels on IRS Stonehill boxes sent to the Tax Division.

**Response:** Undisputed but also immaterial. This sixth FOIA request is not a part of this lawsuit.

72.    Mrs. Stonehill's September 28, 2018 FOIA request was filed to obtain information on the "storage, transfer and review" of records contained in 86 boxes of Internal Revenue Service ("IRS").  Stonehill specifically asked for "all logs and/or records containing names of any representative of the IRS or the Tax Division who had access to or reviewed …the 86 boxes of Stonehill documents discovered in 2000-2003 in the IRS storage facility in Suitland, Maryland (#3) and  "All records or correspondence related to the transfer of the 86 boxes of Stonehill documents stored at the Federal Records Center in Suitland, Maryland to the Tax Division and/or the IRS." (#7).

**Response:** This assertion is immaterial.

73. The records that have been produced show that the Tax Division had access to all of the 86 boxes of IRS Stonehill boxes between 2001 and 2020.[36]

    **Response:** This assertion is immaterial.

74. Other than 3 OF-11s filed by Tax Division attorney Richard Latterell on 3/27/2003 (the other OF-11s have either been removed or destroyed), the only information that has been identified in response to Mrs. Stonehill's request for the names of Tax Division employees who had access to the Stonehill IRS boxes is on the shipping labels NARA placed on the boxes when they were sent to Charles Duffy at the Tax Division.[37]

    **Response:** This assertion is immaterial. A shipping label is not an agency record under FOIA. As argued in NARA's briefs, there is no obligation to search for or produce one. NARA also disputes the assertion to the extent that it presumes shipping labels exist. As explained in NARA's briefs, the Agency conducted a search without conceding that a shipping label is an agency record and discovered only two labels on the IRS boxes. Plaintiff does not cite a source to support this assertion. *See* Fed. R. Civ. P. 56(c)(1). Additionally, NARA also disputes the assertion that a shipping label would indicate "who had access to the Stonehill IRS boxes." It would only indicate who to deliver a package to.

75. NARA created the labels and is in possession of the labels.

    **Response:** This assertion is immaterial. A shipping label is not an agency record under FOIA. As argued in NARA's briefs, there is no obligation to search for or produce one. NARA also disputes the assertion to they exist. As explained in NARA's briefs, the Agency conducted a search without conceding that a shipping label is an agency record and

---

[36]     Ex. 8(d), Ex. 3(b)

[37]     Ex. 3(d)

discovered only two labels on the IRS boxes. Plaintiff does not cite a source to support this assertion. *See* Fed. R. Civ. P. 56(c)(1).

76.     According to Christopher Pinkney, that information should be available for refiles after 2009 when ARCIS became activated.[38]

> **Response:** Disputed. The source cited by Plaintiff does not support the assertion she made. *See* Fed. R. Civ. P. 56(c)(1).

77.     The mailing labels on the IRS Stonehill boxes were created by the WNRC in response to requests from attorneys at the Department of Justice Tax Division ("Tax Division") asking the WNRC to send the Stonehill IRS boxes to Tax Division attorneys Richard A. Latterell ("Latterell") and Charles Duffy ("Duffy").[39]

> **Response:** This assertion is immaterial. A shipping label is not an agency record under FOIA. As argued in NARA's briefs, there is no obligation to search for or produce one. NARA also disputes the assertion to the extent that it presumes shipping labels exist. As explained in NARA's briefs, the Agency conducted a search without conceding that a shipping label is an agency record and discovered only two labels on the IRS boxes. The source cited by Plaintiff does not support the assertion she made. *See* Fed. R. Civ. P. 56(c)(1).

78.     Both Latterell and Duffy represented the Government in the Rule 60(b)(6) litigation with Stonehill.

> **Response:** This assertion is immaterial.

---

[38]     Ex. 3(e)

[39]     Ex. 1(m), Ex. 3(d)

79.     NARA has not disputed that the shipping labels on the Stonehill boxes sent to the Tax Division to the attention of Charles Duffy, were created by NARA.

> **Response:** This assertion is immaterial. A shipping label is not an agency record under FOIA. As argued in NARA's briefs, there is no obligation to search for or produce one. NARA also disputes the assertion to the extent that it presumes shipping labels exist. As explained in NARA's briefs, the Agency conducted a search without conceding that a shipping label is an agency record and discovered only two labels on the IRS boxes. Plaintiff does not cite a source to support this assertion. *See* Fed. R. Civ. P. 56(c)(1).

80.     At the time Mrs. Stonehill's FOIA request was filed, the mailing labels were attached to the Stonehill boxes and they were in the possession of the WNRC.

> **Response:** This assertion is immaterial. A shipping label is not an agency record under FOIA. As argued in NARA's briefs, there is no obligation to search for or produce one. NARA also disputes the assertion to the extent that it presumes shipping labels exist. As explained in NARA's briefs, the Agency conducted a search without conceding that a shipping label is an agency record and discovered only two labels on the IRS boxes. Plaintiff does not cite a source to support this assertion. *See* Fed. R. Civ. P. 56(c)(1).

81.     The mailing labels came into the possession of NARA in the conduct of its official duties which included sending records stored at NARA facilities to agency's such as the IRS or the Tax Division in response to the agency's request for records.

> **Response:** This assertion is immaterial. A shipping label is not an agency record under FOIA. As argued in NARA's briefs, there is no obligation to search for or produce one. NARA also disputes the assertion to the extent that it presumes shipping labels exist. As explained in NARA's briefs, the Agency conducted a search without conceding that a

shipping label is an agency record and discovered only two labels on the IRS boxes. Plaintiff does not cite a source to support this assertion. *See* Fed. R. Civ. P. 56(c)(1). Additionally, NARA uses SF-135 forms, OF-11 forms, and ARCIS data to document the "transfer, storage, reference requests . . . , record pick-up and delivery, and refiles of customer agency records[,]" not mailing labels. *See* Scanlon Decl. ¶ 24, ECF No. 21-2.

82.    The mailing labels have been on the Stonehill IRS boxes since the boxes were sent to the Tax Division beginning at least as early as 2003[40] and they have remained in NARA's possession for the following two decades.[41]

> **Response:** This assertion is immaterial. A shipping label is not an agency record under FOIA. As argued in NARA's briefs, there is no obligation to search for or produce one. NARA also disputes the assertion to the extent that it presumes shipping labels exist. As explained in NARA's briefs, the Agency conducted a search without conceding that a shipping label is an agency record and discovered only two labels on the IRS boxes. The sources cited by Plaintiff do not support the assertion she made. *See* Fed. R. Civ. P. 56(c)(1).

83.    The shipping labels on the Stonehill IRS boxes at issue here are shipping labels that were prepared by the WNRC and placed on the boxes when they were sent to the Tax Division.

> **Response:** This assertion is immaterial. A shipping label is not an agency record under FOIA. As argued in NARA's briefs, there is no obligation to search for or produce one. NARA also disputes the assertion to the extent that it presumes shipping labels exist. As explained in NARA's briefs, the Agency conducted a search without conceding that a

---

[40]    Lattrell OF-11 Ex. 1(L)

[41]    Ex. 3(b)

shipping label is an agency record and discovered only two labels on the IRS boxes.

Plaintiff does not cite a source to support this assertion. *See* Fed. R. Civ. P. 56(c)(1).

84.    Under the Federal Records Act, NARA is part of a "unified system for handling the 'life cycle' of federal records—covering their creation, maintenance and use, and eventually their disposal…"[42]

> **Response:** This assertion is immaterial. It is also not a statement of fact.

85.    Preparing mailing labels to document the transfer of agency records back to the agency (or to a different agency if authorized by a specific rule) is part of NARA' function of management, maintaining and preserving documents that have been transferred to NARA by an agency for temporary or permanent custody.

> **Response:** This assertion is immaterial. A shipping label is not an agency record under
>
> FOIA. As argued in NARA's briefs, there is no obligation to search for or produce one.
>
> NARA also disputes the assertion to the extent that it presumes shipping labels exist. As
>
> explained in NARA's briefs, the Agency conducted a search without conceding that a
>
> shipping label is an agency record and discovered only two labels on the IRS boxes.
>
> Plaintiff does not cite a source to support this assertion. *See* Fed. R. Civ. P. 56(c)(1).
>
> Additionally, NARA uses SF-135 forms, OF-11 forms, and ARCIS data to document the
>
> "transfer, storage, reference requests . . . , record pick-up and delivery, and refiles of
>
> customer agency records[,]" not mailing labels. *See* Scanlon Decl. ¶ 24, ECF No. 21-2.

86.    The mailing labels provide a record to document which agencies have had access to the records.

---

[42]    SJM at 3

**Response:** This assertion is immaterial. A shipping label is not an agency record under FOIA. As argued in NARA's briefs, there is no obligation to search for or produce one. NARA also disputes the assertion to the extent that it presumes shipping labels exist. As explained in NARA's briefs, the Agency conducted a search without conceding that a shipping label is an agency record and discovered only two labels on the IRS boxes. Plaintiff does not cite a source to support this assertion. *See* Fed. R. Civ. P. 56(c)(1). Additionally , NARA uses SF-135 forms, OF-11 forms, and ARCIS data to document the "transfer, storage, reference requests . . . , record pick-up and delivery, and refiles of customer agency records[,]" not mailing labels. *See* Scanlon Decl. ¶ 24, ECF No. 21-2.

87.    The shipping labels are not IRS records,[43] and they are not Tax Division records.

**Response:** This assertion is immaterial. The issue in this case is whether shipping labels are NARA agency records. Also, the source cited by Plaintiff does not support the assertion she made. *See* Fed. R. Civ. P. 56(c)(1). Whether the IRS or the Tax Division disclaims ownership of records does not mean NARA claims ownership of it.

88.    Shipping labels were **not** placed on the boxes by the Tax Division to transfer the boxes back to the WNRC.

**Response:** This assertion is immaterial. A shipping label is not an agency record under FOIA. As argued in NARA's briefs, there is no obligation to search for or produce one. NARA also disputes the assertion to the extent that it presumes shipping labels exist. As explained in NARA's briefs, the Agency conducted a search without conceding that a shipping label is an agency record and discovered only two labels on the IRS boxes. Plaintiff does not cite a source to support this assertion. *See* Fed. R. Civ. P. 56(c)(1).

---

[43]    Ex. 1(m)

89.    The Tax Division arranged for the return of the IRS Stonehill boxes which were picked up from the Tax Division by WNRC staff and returned to the WNRC.[44]

**Response:** This assertion is immaterial. A shipping label is not an agency record under FOIA. As argued in NARA's briefs, there is no obligation to search for or produce one. NARA also disputes the assertion to the extent that it presumes shipping labels exist. As explained in NARA's briefs, the Agency conducted a search without conceding that a shipping label is an agency record and discovered only two labels on the IRS boxes.

90.    The IRS Stonehill boxes were not **shipped** back to NARA.

**Response:** This assertion is immaterial. Plaintiff does not cite a source in support of this assertion. *See* Fed. R. Civ. P. 56(c)(1).

91.    The shipping labels were prepared or placed on the IRS Stonehill boxes by the WNRC when the boxes were originally sent to the Tax Division.

**Response:** This assertion is immaterial. A shipping label is not an agency record under FOIA. As argued in NARA's briefs, there is no obligation to search for or produce one. NARA also disputes the assertion to the extent that it presumes shipping labels exist. As explained in NARA's briefs, the Agency conducted a search without conceding that a shipping label is an agency record and discovered only two labels on the IRS boxes. Plaintiff does not cite a source to support this assertion. *See* Fed. R. Civ. P. 56(c)(1).

92.    The IRS (which owns the records **in** the Stonehill boxes) has disclaimed ownership of the shipping labels.[45]

---

[44]    Ex. 8(e)

[45]    Ex. 1(o)

**Response:** This assertion is immaterial. A shipping label is not an agency record under FOIA. As argued in NARA's briefs, there is no obligation to search for or produce one. NARA also disputes the assertion to the extent that it presumes shipping labels exist. As explained in NARA's briefs, the Agency conducted a search without conceding that a shipping label is an agency record and discovered only two labels on the IRS boxes. Additionally, whether the IRS disclaims ownership of nonexistent labels does not mean NARA claims ownership of nonexistent labels.

93.    6 C.F.R. sec. 1233.18(a) provides that "NARA will not disclose the record except to the agency that maintains the record, or under rules established by that agency which are consistent with existing laws,"[46]

**Response:** Undisputed.

94.    The Tax Division does not own either the labels which were prepared by NARA or the IRS Stonehill records in the boxes.

**Response:** This assertion is immaterial. A shipping label is not an agency record under FOIA. As argued in NARA's briefs, there is no obligation to search for or produce one. NARA also disputes the assertion to the extent that it presumes shipping labels exist. As explained in NARA's briefs, the Agency conducted a search without conceding that a shipping label is an agency record and discovered only two labels on the IRS boxes. Plaintiff does not cite a source to support this assertion. *See* Fed. R. Civ. P. 56(c)(1).

95.    NARA has used the information on the shipping labels on several occasions to respond to FOIA requests filed by Mrs. Stonehill in 2014 and 2018 seeking information about IRS or Tax Division access to boxes of Stonehill documents.

---

[46]    Opp. at 5

**Response:** This assertion is immaterial. A shipping label is not an agency record under FOIA. As argued in NARA's briefs, there is no obligation to search for or produce one. NARA also disputes the assertion to the extent that it presumes shipping labels exist. As explained in NARA's briefs, the Agency conducted a search without conceding that a shipping label is an agency record and discovered only two labels on the IRS boxes. Plaintiff does not cite a source to support this assertion. *See* Fed. R. Civ. P. 56(c)(1). Additionally, NARA uses SF-135 forms, OF-11 forms, and ARCIS data to document the "transfer, storage, reference requests . . . , record pick-up and delivery, and refiles of customer agency records[,]" not mailing labels. *See* Scanlon Decl. ¶ 24, ECF No. 21-2.

96. NARA personnel have read and relied upon the mailing labels to prepare responses to questions from other agency officials and to respond to FOIA requests about Tax Division access to the IRS Boxes of Stonehill records.

**Response:** This assertion is immaterial. A shipping label is not an agency record under FOIA. As argued in NARA's briefs, there is no obligation to search for or produce one. NARA also disputes the assertion to the extent that it presumes shipping labels exist. As explained in NARA's briefs, the Agency conducted a search without conceding that a shipping label is an agency record and discovered only two labels on the IRS boxes. Plaintiff does not cite a source to support this assertion. *See* Fed. R. Civ. P. 56(c)(1). Additionally, NARA uses SF-135 forms, OF-11 forms, and ARCIS data to document the "transfer, storage, reference requests . . . , record pick-up and delivery, and refiles of customer agency records[,]" not mailing labels. *See* Scanlon Decl. ¶ 24, ECF No. 21-2.

97.    On September 22, 2021, a conference call was held between NARA and IRS representatives to discuss the Stonehill FOIA litigation.[47]

**Response:** This assertion is immaterial.

98.    Helene Newsome sent a follow-up report to Pinkney and other participants on October 4, 2021, stating that each item of plaintiff's request which pertains to NARA, provided my understanding of NARA's response to each item, and set forth additional questions we have with respect to the item (which are stated in red.)"[48]

**Response:** This assertion is immaterial.

99.    Newsome stated that with respect to Question 5 "All records or correspondence related to the transfer of the 86 boxes of Stonehill documents stored at the Federal Records Center in Suitland Maryland to the DOJ Tax Division and or the IRS," Newsome's only comment was highlighted in red:

> Does NARA have any records (other than the responsive documents addressed in item 1 and the shipping labels that were mentioned during our call last week that would be responsive to this request? No.[49]

**Response:** This assertion is immaterial.

100.    On August 10, 2021 Shareef Abdul-Jalil ("Jalil"), NARA's Assistant Director-Unclassified Operations, sent an email to Palumbo (cc. Christopher Pinkney):[50]

---

[47]    Ex. 3(f)

[48]    October 4, 2021 Email from Newsome to Pinkney et al. Ex 3(f)

[49]    October 4, 2021 email from Newsome to Pinkney et all. Ex 3(f) Newsome added that the participants should "feel free to respond to the above questions by email" and "to the extent that there are matters which need to be discussed by phone, we can arrange that."

[50]    Ex. 3(d) - The Shipping labels are created by NARA to perform its function of handling the maintenance and use of Federal Records and the categorization and safekeeping of Records.

**all the 89 boxes**[2] **were pulled from their shelving location and reviewed for potential new information.** The review resulted in the discovery of three additional OF- 11's from 2001 and 2003 (see attachment). Two new requestors were discovered-Mae J.

Lew and Annette Mitchell in addition to Richard A. Latterell which was already a known requestor. **Most of the boxes still in their original container were previously mailed to the recipient below:**

> Department of Justice
> ATT: Charles Duffy
> Tax Division 555 4th Street, N.W.  JCB Bldg, Room 7215
> Washington, D.C. 20001

> Box 82 contained a shipping label from the Department of Justice office located in New York City.  The box was mailed from the New York office to Washington, DC."

**Response:** This assertion is immaterial.

101.    On August 3, 2015, Christapher Pinkney ("Pinkney"), the Director of the WNRC,[51] responded to the IRS's requests for information about individuals who had access to the 86 Boxes: "It appears that most or all of the boxes were charged out to individuals associated with the Department of Justice Tax Division."[52]

**Response:** This assertion is immaterial.

102.    The shipping labels on the IRS Stonehill boxes at issue in this action, were not placed on the IRS boxes when they were originally sent to the WNRC by the originating agency.

**Response:** This assertion is immaterial. A shipping label is not an agency record under FOIA. As argued in NARA's briefs, there is no obligation to search for or produce one.

---

[51]    In response to the IRS request for information responsive to Bethany McLean's FOIA 2015 request for the names of any individual who had access to the 86 boxes of IRS documents at the WNRC, Christopher Pinkney ("Pinkney") the acting Director of the Washington National Records Center, stated there was "activity associated with Transfer #W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 prior to May 2009 (when ARCIS deployed). Ex. 1(q)

[52]    August 3, 2015 email from Pinkney to G. Lasssiter. Ex. 3(a)

NARA also disputes the assertion to the extent that it presumes shipping labels exist. As explained in NARA's briefs, the Agency conducted a search without conceding that a shipping label is an agency record and discovered only two labels on the IRS boxes. Plaintiff does not cite a source to support this assertion. *See* Fed. R. Civ. P. 56(c)(1).

103.    The shipping labels at issue in this action were placed on the IRS boxes by NARA.[53]

   **Response:** This assertion is immaterial. A shipping label is not an agency record under FOIA. As argued in NARA's briefs, there is no obligation to search for or produce one. NARA also disputes the assertion to the extent that it presumes shipping labels exist. As explained in NARA's briefs, the Agency conducted a search without conceding that a shipping label is an agency record and discovered only two labels on the IRS boxes. The source cited by Plaintiff does not support the assertion she made. *See* Fed. R. Civ. P. 56(c)(1).

104.    Other than Form-135's, OF-11s and shipping labels, the only other potential source of information containing the names of individuals who had access to the Stonehill IRS boxes, were the refile lists which are generated by ARCIS from NARA data.

   **Response:** This assertion is immaterial. A shipping label is not an agency record under FOIA. As argued in NARA's briefs, there is no obligation to search for or produce one.

---

[53]    NARA claims it "has no intent to retain or use a shipping label if one exists" and that "if NARA needs mailing information about an agency, it is contained in a system like ARCIS."

   **NARA does not rely on shipping labels to perform its mission;** they are what UPS and FedEx use to perform theirs. If NARA did rely on shipping labels to perform its mission, the agency would crumble because, as explained above, **not every agency sends records to NARA via FedEx or UPS**, so not every box contains a shipping label. Instead, to organize records, NARA uses ARCIS Transfer Numbers, not shipping labels. And although address information may be included in a system like ARCIS, NARA is not taking pictures of the labels and uploading them, so shipping labels have not been integrated into an agency record system.

NARA also disputes the assertion to the extent that it presumes shipping labels exist. As explained in NARA's briefs, the Agency conducted a search without conceding that a shipping label is an agency record and discovered only two labels on the IRS boxes. The source cited by Plaintiff does not support the assertion she made. *See* Fed. R. Civ. P. 56(c)(1). Additionally, a shipping label would not be a "potential source of information containing the names of individuals who had access to the Stonehill IRS boxes." It would only identify who a package was shipped to.

105.    The NARA Excel sheet produced by the IRS in this action, included only one contact name,[54] Annette Mitchell (Mitchell"), IRS Records Management, who was listed as the contact for the first withdrawal of Box 83 (an allegedly lost box) on December 8, 2009.

**Response:** Undisputed.

106.    On August 3, 2021, Ivan Johnson ("Johnson), Chief NARA Service Branch, contacted Palumbo and reported that with respect to Question l,[55] the IRS Stonehill boxes "had refile labels as well as asset labels on them dating back to 2013."[56]

**Response:** Immaterial but undisputed.

107.    The refile labels contain only the date on which a specific box was returned to NARA. The labels contain no information identifying the agency or the individual who returned the box.

**Response:** Undisputed.

---

[54]    Ex. 8(d) The name listed on the ARCIS excel sheets as the person who refiled the box with NARA is the same person (or Agency) who originally requested the box be sent from NARA.

[55]    Question 1 "All logs and records containing the names of any representative of the IRS or the DOJ Tax Division who had access to or reviewed the 86 boxes of Stonehill documents discovered in 2000-2003 in the IRS Storage facility in Suitland Md. (I believe accession no PT-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)"

[56]    August 3, 2021 email from I. Johnson to A. Palumbo, Ex. 3(c)

108.   On   August   10,   2021,   Shareef   Abdul-Jalil   ("Jalil"),   NARA's   Assistant

Director- Unclassified Operations, wrote to Palumbo (cc. Christopher Pinkney)[57] and reported:

> **all the 89 boxes[58] were pulled from their shelving location and reviewed for potential new information.**  The review resulted in the discovery of three additional OF-11's from 2001 and 2003 (see attachment).  Two new requestors were discovered-Mae J. Lew and
>
> Annette Mitchell in addition to Richard A. Latterell which was already a known requestor.  **Most of the boxes still in their original container were previously mailed to the recipient below:**
>
> **Department of Justice**
>
> **ATT: Charles Duffy, Tax Division 555 4th Street, N.W.  JCB Bldg, Room 7215Washington, D.C. 20001**
>
> **Box 82 contained a shipping label f**rom the Department of Justice office located in New York City.  The box was mailed from the New York office to Washington, DC.

   **Response:** Immaterial but undisputed.

109.   On August 10, 2021, Pinkney sent an email to Palumbo:

> My recollection is that **based on the cover sheets we found within the box, we were able to establish that the materials had been previously reviewed by DOJ's Tax Division**.  I believe that there are also notes on some of the sheets that indicated that the boxes had been reviewed by "defendant's counsel" while charged -out to DOJ.[59]

   **Response:** Immaterial but undisputed.

---

[57]     August 10, 2021 email Jalil to A. Palumbo Ex. 3(d)

[58]     NARA informed Mrs. Stonehill that because two of the boxes had been damaged, three additional boxes were refiled and that the total number of boxes was 89 not 86. On January 4, 2014, the IRS claimed that because two damaged boxes had been refiled as four boxes, when IRS returned the boxes to NARA, 86, not 84 boxes were returned. Ston00119-0120, Plaintiff's Ex. 8(e)

[59]     August 10, 2021 Pinkney to Palumbo Ex. 3(d)

**Information Obtained from NARA and the Criminal Division Related to the Discovery of the Lost Criminal Division Files.**

110.    In October 1999, five months after Stonehill had requested information about the destruction of the files, Criminal Division consultant Les Rowe ("Rowe") permanently withdrew the 12 boxes of Stonehill files (#60-84-0234) from NARA.[60]

> **Response:** NARA does not dispute that the Criminal Division permanently withdrew records associated with transfer number 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 in October 1999. The rest of Plaintiff's assertion is immaterial.

110.    The Criminal Division has no record confirming that those boxes were subsequently destroyed.

> **Response:** This assertion is immaterial. Whatever was done or not done with records after they were permanently withdrawn from a Federal Records Center has no bearing on whether NARA fulfilled its FOIA obligations in this case. Plaintiff also does not cite a source to support this assertion. *See* Fed. R. Civ. P. 56(c)(1).

111.    In September 2000, Rowe was asked by Seth Heald, a Tax Division attorney in the Rule 60(b)(6) proceeding, to locate Stonehill documents from the Criminal Division. Rowe, who had permanently withdrawn Criminal Division records from NARA less than a year earlier, claimed that he requested the files he could identify from NARA, which found two file jackets under the name of Robert Brooks, DJ #46-16-704, Accession # 60-90-467. These files were subsequently placed in a Criminal Division safe.[61]

---

[60]    Ex. 1(b)

[61]    Compl. Ex. 3(e)

**Response:** This assertion is immaterial. It has no bearing on whether NARA fulfilled its FOIA obligations in this case. Additionally, the source cited by Plaintiff does not support the assertion she made. *See* Fed. R. Civ. P. 56(c)(1).

112.    On October 2, 2000, approximately a year after Rowe had withdrawn the 12 boxes of Stonehill files (#60-84-0234) from NARA, the Tax Division's Chief of Special litigation advised Stonehill that nine sections of a DOJ file pertaining to the criminal prosecution in the Southern District of New York were processed, that the file was closed in February 1971, that the sections of the file were no longer retrievable and that may have been destroyed 15 years after closing.

**Response:** This assertion is immaterial. It has no bearing on whether NARA fulfilled its FOIA obligations in this case. Plaintiff also does not cite a source to support this assertion. *See* Fed. R. Civ. P. 56(c)(1).

113.    Several months later, after the Criminal Division claimed the Stonehill files in the safe could not be located, Rowe claimed that he was asked by the Criminal Division to help locate the files.

**Response:** This assertion is immaterial. It has no bearing on whether NARA fulfilled its FOIA obligations in this case. Plaintiff also does not cite a source to support this assertion. *See* Fed. R. Civ. P. 56(c)(1).

114.    In his Declaration, Rowe stated that in response to several requests to NARA, he was informed that the files were on loan to the Criminal Division.[62]

**Response:** This assertion is immaterial. It has no bearing on whether NARA fulfilled its FOIA obligations in this case.

---

[62]    Ex. 1(p) Decl. of Leslie Rowe March 22, 2002

115.    On February 12, 2001, Stonehill filed a new FOIA request with the Chief of the Criminal

Division FOIA Unit, Thomas McIntyre ("McIntyre"), seeking copies of all documents relating to

Stonehill.

>    **Response:** This assertion is immaterial. It has no bearing on whether NARA fulfilled its
>
>    FOIA obligations in this case.

116.    On February 6, 2002, McIntyre reported that the documents were missing from the safe

and that "after a diligent search for records pertaining to Harry Stonehill…we have been unable to

locate *any records* responsive to your request… "*material which it appears we previously did

have…can no longer be located….*"[63]

>    **Response:** This assertion is immaterial. It has no bearing on whether NARA fulfilled its
>
>    FOIA obligations in this case.

117.    On July 10, 2014, Bethany Mclean ("McLean"), an investigative journalist, filed an FOIA

request with the Criminal Division, on behalf of Mrs. Stonehill, for documents related to Stonehill.

McLean also filed an FOIA request with the National Archives and Records Administration

("NARA") for all documents transferred to NARA from the Department of Justice Criminal

Division.[64]

>    **Response:** This assertion is immaterial. It has no bearing on whether NARA fulfilled its
>
>    FOIA obligations in this case.

118.    On July 22, 2014, Martha Wagner Murphy, ("Murphy") NARA Chief, Special Access and

FOIA Staff responded to Mclean stating that NARA did not have legal custody of records stored

at the Washington National Records Center and that Legal Custody still belongs to the originating

---

[63]    Compl. Ex. 3(f)

[64]    Ex. 1(t)

agency - the Department of Justice. Murphy informed McLean that to access these records she would need to file an FOIA request with the Department of Justice.[65]

>**Response:** NARA does not dispute that it does not have legal custody of agency records transferred to a Federal Records Center. *See* 36 C.F.R. § 1233.18(a) ("Agency records transferred to a NARA Federal Records Center remain in the legal custody of the agency.").

119.    On August 29, 2014, Kenneth Courter ("Courter'), the Acting Chief of the FOIA/PA Unit for the Criminal Division, informed McLean that "should the records you are seeking still exist, they would be maintained by the National Archives and Records Administration." Courter suggested that McLean file an FOIA request with NARA.[66]

>**Response:** This assertion is immaterial. It has no bearing on whether NARA fulfilled its FOIA obligations in this case. To the extent that it suggests that any records were permanently transferred to NARA, NARA disputes the assertion. *See* 2d Scanlon Decl. ¶ 9, ECF No. 28-2. Courter did not suggest that McLean file a FOIA request with NARA.

120.    On October 10, 2014, McLean wrote to NARA and the Criminal Division and requested clarification as to whether she would be allowed to access Criminal Division records stored at NARA (or the Washington National Records Center) concerning Harry Stonehill.[67]

>**Response:** This assertion is immaterial. It has no bearing on whether NARA fulfilled its FOIA obligations in this case. To the extent that it suggests that any records were permanently transferred to NARA, NARA disputes the assertion. *See* 2d Scanlon Decl. ¶ 9, ECF No. 28-2.

---

[65]    Ex. 1(t)

[66]    Ex. 1(t)

[67]    Ex. 1(t)

121.    On October 21, 2014, Murphy wrote to McLean and informed her that "DOJ was attempting to inform you that if any records relating to your topic still exist, they would have been scheduled as permanent and transferred to NARA."[68]

> **Response:** This assertion is immaterial. It has no bearing on whether NARA fulfilled its FOIA obligations in this case. To the extent that it suggests that any records were permanently transferred to NARA, NARA disputes the assertion. *See* 2d Scanlon Decl. ¶ 9, ECF No. 28-2. Plaintiff also mischaracterizes the letter, as the author was trying to "interpret" a response, which is speculation.

122.    The Criminal Division requested the return of Container 1 (# 60-90-467) on September 30, 2009 and Container 3 (# 60-90-467) on January 14, 2016, eighteen (18) months after NARA had informed McLean that she should file an FOIA request with DOJ.[69]

> **Response:** This assertion is immaterial. It has no bearing on whether NARA fulfilled its FOIA obligations in this case. To the extent that it suggests that any records were permanently transferred to NARA, NARA disputes the assertion. *See* 2d Scanlon Decl. ¶ 9, ECF No. 28-2.

123.    Two weeks after McLean filed her March 23, 2017 FOIA request with the Criminal Division, on April 6, 2017, the Criminal Division requested that File 1 (# 60-90-467) be returned to NARA.[70]

> **Response:** This assertion is immaterial. It has no bearing on whether NARA fulfilled its FOIA obligations in this case. To the extent that it suggests that any records were

---

[68]    Ex. 1(t)

[69]    NARA documents Ex. 1-f- Excel lines 278-279 and 1-g lines 4359; *see also* Ex. 1-i

[70]    NARA documents Ex. 1-h. Excel line 4823

permanently transferred to NARA, NARA disputes the assertion. *See* 2d Scanlon Decl. ¶

9, ECF No. 28-2.

124.    The Criminal Division returned Container 3 to NARA four months later on August 15,

2017.[71]

> **Response:** This assertion is immaterial. It has no bearing on whether NARA fulfilled its
>
> FOIA obligations in this case. To the extent that it suggests that any records were
>
> permanently transferred to NARA, NARA disputes the assertion. *See* 2d Scanlon Decl. ¶
>
> 9, ECF No. 28-2.

125.    On September 26, 2017, weeks after the Criminal Division had returned container 1 and

container 3 to NARA, Christina Butler ("Butler"), acting Chief of the Criminal Division FOIA

Unit, issued her final response to McLean's March 23, 2017 FOIA request. Butler informed

McLean:

> we found references to records potentially responsive to your
> request…**after a thorough search, some of the records could not be
> located. The remaining documents that might have been responsive to
> your request were destroyed** pursuant to the Criminal Division's record
> retention and disposition schedules, which have been approved by the
> National Archives and Records Administration. Therefore, we are closing
> your request administratively.

> **Response:** This assertion is immaterial. It has no bearing on whether NARA fulfilled its
>
> FOIA obligations in this case. To the extent that it suggests that any records were
>
> permanently transferred to NARA, NARA disputes the assertion. *See* 2d Scanlon Decl. ¶
>
> 9, ECF No. 28-2.

126.    On September 19, 2018, Mrs. Stonehill filed a second request for information about

Stonehill Criminal Division files and requested copies of the records in the files.

---

[71]    NARA documents Ex. 1-i.

**Response:** This assertion is immaterial. It has no bearing on whether NARA fulfilled its FOIA obligations in this case.

126.    On May 24, 2022, the Acting Chief of the FOIA Unit Christine Butler ("Butler") issued a Final response to Mrs. Stonehill on May 24, 2022 which claimed that the only documents that could be released were 6 pages, consisting of a string of redacted internal emails relating to the 2017 FOIA request filed on behalf of Mrs. Stonehill by investigative journalist Bethany McLean.[72]

**Response:** This assertion is immaterial. It has no bearing on whether NARA fulfilled its FOIA obligations in this case.

127.    On April 14, 2023, NARA reported that:

> W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 and W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 have not been destroyed and are currently shelved at the Washington National Records Center. W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 was permanently withdrawn by Les Rowe in October of 1999 (see W060-84-02334 OF-11).[73]

**Response:** Undisputed. Although after further discussions with the Criminal Division, it was determined that at the time that NARA issued its April 14, 2023, letter to Plaintiff, Box One of 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 was in the possession of the Criminal Division. *See* 2d Scanlon Decl. ¶ 11, ECF No. 28-2. Subsequently, the Criminal Division withdrew the rest of its records associated with transfer numbers 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 and 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. *Id.* ¶ 12.

128.    On September 20, 2023, four months after NARA confirmed that the files had not been destroyed and were shelved at the WNRC, the undersigned counsel received the following email message from counsel for the Criminal Division in *Stonehill v. Criminal Division*:

---

[72]    Ex. 1(r)

[73]    Ex. 1(j)

DOJ Crim has indeed searched the boxes that were at NARA. Earlier this
month, the FOIA/PA Unit and a RIM Records Specialist manually reviewed
the contents of the four boxes associated with the 060-90 transfer number,
including a re-review of Box One. The four boxes did not contain relevant
DJ file number or any responsive records pertaining to Harry S. Stonehill.
Also, this month, the FOIA/PA Unit manually reviewed the contents of the
four boxes associated with the 060-07 transfer number. The four boxes did
not contain the DJ file number or any responsive records pertaining to Harry
S. Stonehill either.[74]

**Response:** This assertion is immaterial. It has no bearing on whether NARA fulfilled its

FOIA obligations in this case.


Date:  November 2, 2023                        Respectfully submitted,
       Washington, DC
                                               MATTHEW M. GRAVES, D.C. Bar. #481052
                                               United States Attorney

                                               BRIAN P. HUDAK,
                                               Chief, Civil Division

                                        By:    */s/ Sam Escher*
                                               SAM ESCHER, D.C. Bar #1655538
                                               Assistant United States Attorney
                                               601 D Street, N.W.
                                               Washington, D.C. 20530
                                               (202) 252-2531
                                               Sam.Escher@usdoj.gov

                                               *Attorneys for the United States of America*

---

[74]    September 20, 2023 email from Douglas Dreier to R. Heggestad, attached to Plaintiff's
motion as Ex. 1.