UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PAULINE DALE STONEHILL,

      Plaintiff,

      v.

NATIONAL ARCHIVES AND RECORDS
ADMINISTRATION,

      Defendant.

Civil Action No. 22-3391 (CJN)

**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
AND OPPOSITION TO PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

**INTRODUCTION**............................................................................................................. **1**

**ARGUMENT** ..................................................................................................................... **1**

I.      Shipping Labels Are Not Agency Records ................................................................. 1

II.     The Agency Performed an Adequate Search .................................................... 12

III.    Criminal Division Supplement ...................................................................... 18

      A.     Transfer Numbers W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 and W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.......................... 18

      B.     Transfer Number W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 ....................................................... 23

**CONCLUSION** ............................................................................................... **24**

i

# TABLE OF AUTHORITIES

## CASES

*Boyd v. Dep't of Just.*,
475 F.3d 381 (D.C. Cir. 2007) ............................................................................. 12, 17

*Cal. Air Res. Bd. v. EPA*,
Civ. A. No. 19-965 (CKK), 2020 WL 2934914 (D.D.C. June 3, 2020) ...................................... 16

*Cause of Action Inst. v. Nat'l Oceanic & Atmospheric Admin.*,
Civ. A. No. 19-1927 (TSC), 2023 WL 3619345 (D.D.C. May 24, 2023) ................................... 1

*Cause of Action Inst. v. Off. of Mgmt. & Budget*,
10 F.4th 849 (D.C. Cir. 2021) ................................................................................ 5

*Cause of Action v. National Archives & Records Administration*,
753 F.3d 210 (D.C. Cir. 2014) ............................................................................ 2, 19

*Dep't of Just. v. Tax Analysts*,
492 U.S. 136 (1989) .......................................................................................... 2

*Eddington v. Dep't of Def.*,
35 F.4th 833 (D.C. Cir. 2022) ................................................................................. 6

*Elec. Priv. Info. Ctr. v. Drone Advisory Comm.*,
995 F.3d 993 (D.C. Cir. 2021) ................................................................................ 8

*Energy Pol'y Advocs. v. Dep't of Interior*,
Civ. A. No. 21-1411 (JDB), 2023 WL 2585761 (D.D.C. Mar. 21, 2023) .................................... 7

*Forsham v. Harris*,
445 U.S. 169 (1980) .......................................................................................... 7

*Hudgins v. IRS*,
620 F. Supp. 19 (D.D.C. 1985) ............................................................................... 16

*International Brotherhood of Teamsters v. National Mediation Board*,
712 F.2d 1495 (D.C. Cir. 1983) ............................................................................... 8

*Jordan v. Drug Enf't Admin.*,
Civ. A. No. 22-2195 (JEB), 2023 WL 2809132 (D.D.C. Apr. 6, 2023) ................................. 11, 15

*Jud. Watch, Inc. v. U.S. Secret Serv.*,
726 F.3d 208 (D.C. Cir. 2013) ................................................................................ 9

*Oglesby v. Dep't of Army*,
920 F.2d 57 (D.C. Cir. 1990) ............................................................................. 12, 22

*Powell v. Internal Revenue Serv.,*
255 F. Supp. 3d 33 (D.D.C. 2017) ...................................................................................... 11, 15

*Shapiro v. Dep't of Just.,*
40 F.4th 609 (D.C. Cir. 2022) .......................................................................................... 12, 16

*Talley v. Department of Labor,*
Civ. A. No. 19-0493, 2020 WL 3966312 (W.D. Mo. July 13, 2020) ............................................. 8

*United States v. Est. of Stonehill,*
660 F.3d 415 (9th Cir. 2011) ........................................................................................................ 9

*Yeager v. DEA,*
678 F.2d 315 (D.C. Cir. 1982) ................................................................................................... 17

**STATUTES**

44 U.S.C. § 3301 ....................................................................................................................... 8

5 U.S.C. § 552 ...................................................................................................................... 1, 7

**REGULATIONS**

36 C.F.R. § 1233.18 .................................................................................................................. 19

The National Archives and Records Administration ("NARA," "Archives," or "Agency") respectfully submits this reply in further support of its motion for summary judgment and opposition to Pauline Dale Stonehill's ("Plaintiff's") cross motion for summary judgment for her claim under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

## INTRODUCTION

The first ten pages of Plaintiff's brief outlines her and her husband's decades-long vendetta against the government after her husband was found liable for tax evasion and the government instituted foreclosure proceedings against them. *See* Pl.'s Mem. at 5-15, ECF No. 26-1.[1] The information is irrelevant to the issues before the Court today: whether a shipping label is an agency record under FOIA and whether the Agency conducted an adequate search in response to the three[2] FOIA requests at issue. As demonstrated in the United States' moving papers, shipping labels are not agency records, and the Agency otherwise conducted adequate searches.

## ARGUMENT

### I.    Shipping Labels Are Not Agency Records

"The Supreme Court has set forth two criteria for requested materials to qualify as agency records under FOIA." *Cause of Action Inst. v. Nat'l Oceanic & Atmospheric Admin.*, Civ. A. No. 19-1927 (TSC), 2023 WL 3619345, at *3 (D.D.C. May 24, 2023). "First, an agency must either create or obtain the requested materials." *Id.* (quoting *Dep't of Just. v. Tax Analysts*, 492 U.S.

---

[1]    On October 3, 2023, the Court ordered Plaintiff to file an updated opposition and cross motion, but Plaintiff has not done so at the time of this filing. *See* Min. Order (Oct. 3, 2023). Therefore, the Agency cites to the proposed amended opposition and cross motion, *see* ECF No. 26-1, attached to her motion to amend.

[2]    The Agency explained in its opening brief how Plaintiff served six FOIA requests on the Agency, but this lawsuit only encompasses three. *See* Def.'s Mot. at 7-8, ECF No. 21. Plaintiff has since submitted a seventh and an eighth request to the Agency for essentially the same records as all the others. *See* 7th FOIA Req., ECF No. 28-3; 8th FOIA Req., ECF No. 28-4.

136, 144 (1989)). "Second, the agency must be in control of the requested materials at the time the FOIA request is made." *Id.* (quoting *Tax Analysts*, 492 U.S. at 145). Under the *Burka* test, as shown in the Agency's opening brief, a shipping label affixed to a box housed at a Federal Records Center is not an agency record within the meaning of FOIA. *See* Def.'s Mot. at 12-15, ECF No. 21.[3]

Plaintiff's response to the Agency's motion is both meritless and misguided. Among other things, she repeatedly accuses the Agency of misstating the issue, but she does so by creating a distinction without a difference. She states, for example, that she is not interested in shipping labels on boxes to the extent that the labels are return labels to the Agency; instead, she seeks shipping labels on boxes, but only to the extent that the Agency created them and affixed them to boxes before sending the boxes to the IRS or the Tax Division sometime between 2001 and 2003. *See* Pl.'s Mem. at 24 ("This argument misstates the issue. The shipping labels NARA is referring to are shipping labels placed on boxes that are being returned to NARA by the originating agency. The shipping labels on the Stonehill IRS boxes at issue here are shipping labels that were prepared by the WNRC and placed on the boxes when they were sent to the Tax Division." (emphasis in original omitted)); *id.* at 23 ("The mailing labels have been on the Stonehill IRS boxes since the boxes were sent to the Tax Division beginning at least as early as 2003 and they have remained in NARA's possession for the following two decades."). But regardless of who put a shipping label

---

[3]    Tellingly in *Cause of Action v. National Archives & Records Administration*, 753 F.3d 210 (D.C. Cir. 2014), the D.C. Circuit acknowledged the Agency's unique function as a federal agency and further found that the typical tests for control, like the *Burka* test, are unhelpful when analyzing records housed at the Agency. As such, it is unclear whether *Cause of Action* would apply to something like shipping labels, as the case involved actual records from a legislative branch agency. If *Cause of Action* does apply here to shipping labels, Plaintiff's argument still fails because "there must be some relationship between the record and the FOIA-covered agency," and there is none for shipping labels. *Id.* at 215.

on a box when, a shipping label on a box housed at a Federal Records Center is not an agency record under FOIA.

Otherwise, Plaintiff's response to the Agency's motion is filled with conclusory allegations based on no legal or factual support. For example, as indicated in its moving papers, the Agency performed a search of the boxes at issue and discovered two labels. To avoid briefing this issue, without conceding that a shipping label is an agency record, the Agency offered to produce the two labels it found. *See* Email from Escher (July 25, 2023, at 4:31 p.m.), ECF No. 28-5. Plaintiff declined the invitation. *See* Email from Heggestad (July 25, 2023, at 8:25 p.m.), ECF No. 28-5. Now, despite having been informed that the Agency has located only two labels on the boxes at issue, somehow Plaintiff has concluded that the two labels the Agency identified are not the labels she is seeking and there are other shipping labels on the boxes even though the Agency already informed her that it searched the boxes and found only the two.

As best as government counsel can surmise, Plaintiff's conviction that there are shipping labels on the boxes stems from an email that an Agency employee (Ivan Johnson) sent to an IRS employee (Helene Newsome) back in October 2021 about a prior request for "[a]ll records or correspondence related to the transfer of the 86 boxes of Stonehill documents stored at the Federal Records Center in Suitland, Maryland to the [Justice Department's] Tax Division and/or the IRS." *See* ECF No. 26-4 at 21-22. In response to the question, "Does NARA have any records (other than the responsive documents addressed in item I and the shipping labels that were mentioned during our call last week) that would be responsive to this request?" Ivan Johnson replied, "No." *Id.* Because of this email, Plaintiff believes that there are shipping labels.

Further, although Plaintiff continually asserts that the Agency shipped boxes to the IRS or the Tax Division back in 2001 or 2003, and therefore assumes that shipping labels (1) must have

been created by the Agency, (2) must have been affixed to the boxes before they were shipped, and (3) must still be on the boxes today, the Agency has found no conclusive evidence that all the boxes were even sent to the Agency at the time via a service like FedEx or UPS, which would generate a label. To the contrary, transportation may be provided by one of the respective agencies via various methods without generating shipping labels. Agencies are responsible for covering costs of shipping their records to Federal Records Centers via the U.S. Postal Service, commercial carrier, common carrier (on pallets), or agency courier. In addition, some Federal Records Centers will pick up records through the Archives' Metro Courier service. *See* FRC Toolkit, Federal Records Centers (last reviewed July 5, 2023), https://www.archives.gov/frc/toolkit.

The second declaration of Joseph A. Scanlon further establishes that the Agency does not have any record of creating shipping labels for these boxes. *See* 2d Scanlon Decl. ¶ 4, ECF No. 28-2. The Agency conducted an additional search of the Archives and Records Centers Information System ("Archives Information System" or "ARCIS") for records of any shipments by the Agency of the subject records storage boxes since the database was deployed in 2009. The Agency did not locate any record of any such shipments. Consequently, the Agency did not create shipping labels for these boxes, at least since 2009. In addition, any delivery information prior to the deployment of the Archives Information System would be contained in paper OF-11 forms, which were used by agencies to retrieve records from federal records centers; these forms are temporary records scheduled for destruction after three years and are no longer available. *See* Scanlon Decl. ¶¶ 11, 25, ECF No. 21-2.

Fortunately, the Court need not decide whether shipping labels may or may not have been created for all the boxes back in 2001 or 2003, whether they may or may not have been affixed to

the boxes, and whether they may or may not still exist today. Regardless, whether they do or do not exist (and they do not), they are not agency records under FOIA.

Regarding the *Burka* test, Plaintiff continues to allege, without any support, that the factors of the test favor her. For example, for the first factor, Plaintiff states in conclusory fashion that the Agency intended to retain control over the purported shipping labels affixed to boxes sent to the Tax Division back in 2003, over twenty years ago. Pl.'s Mem. at 23 ("The mailing labels have been on the Stonehill IRS boxes since the boxes were sent to the Tax Division beginning at least as early as 2003 and they have remained in the Agency's possession for the following two decades."); *see also id.* at 33 ("In this action, the documents were created by NARA which has manifested a clear intent to control the shipping labels."). As discussed above, this assumes shipping labels were created and used because NARA used a service like FedEx or UPS. But even assuming as much, there can be no genuine dispute that an agency that affixes a shipping label to a package that the agency ships out—regardless of when the package was shipped out but especially if the package was shipped out over twenty years ago—does not intend to retain control over the shipping label, despite Plaintiff's conclusory statements to the contrary.

Regarding the remaining factors of the *Burka* test, Plaintiff similarly states in conclusory fashion that they favor her position without any applicable legal or factual support. *See, e.g.*, *id.* at 24 ("NARA has the ability to use and dispose of the shipping labels as it sees fit.");[4] *id.* at 27 ("NARA is able to use the shipping labels in the conduct of its official business and it is able to

---

[4]    This assertion misstates the rule. The question is not whether the agency is able to use a record; the question is whether the agency actually uses the record. *Cause of Action Inst. v. Off. of Mgmt. & Budget*, 10 F.4th 849, 857 (D.C. Cir. 2021) ("This assertion conflates two different inquiries—whether the agency has the ability to use a document and whether it actually used the document. The possibility of access is not equivalent to use by the agency. Moreover, this kind of speculation about who might have accessed the [documents at issue] does not defeat summary judgment." (citations omitted)).

use and dispose of the shipping labels as it sees fit because they are owned by NARA, not by the IRS or the Tax Division."); *id.* at 27, 31 ("NARA relies on shipping labels to perform its function of transferring Federal records that are in its custody to Agencies who have filed OF-11's requesting the return of Agency records."); *id.* at 25 ("Preparing mailing labels to document the transfer of agency records back to the agency . . . is part of NARA' [sic] function of management, maintaining and preserving documents that have been transferred to NARA by an agency for temporary or permanent custody."); *id.* at 24 ("Shipping labels, in contrast, are created *by NARA* to perform its function of handling the maintenance and use of Federal Records and the categorization and safekeeping of Records." (emphasis in original)); *id.* at 25 ("The mailing labels provide a record to document which agencies have had access to the records."); *id.* at 24 ("Those records are readily available, they have not been destroyed and it does not require NARA to recreate a record.").

These conclusory assertions are entitled to no deference, are unsupported by evidence, *see* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record[.]"); and frankly are just wrong. The declaration of Joseph A. Scanlon, which is relatively detailed and non-conclusory, and thus is accorded a presumption of good faith that cannot be rebutted with purely speculative claims like Plaintiff's, *see Eddington v. Dep't of Def.*, 35 F.4th 833, 937 (D.C. Cir. 2022), establishes clearly that the Agency relies on several other types of documents to perform its functions, like SF-135 forms, OF-11 forms, and information in the Archives Information System, but not shipping labels. *See* Scanlon Decl. ¶¶ 7-12, ECF No. 21-2 (providing an overview of the Agency's Federal Records Center program). The conclusory allegations from Plaintiff's brief do not create a genuine dispute of material fact.

Plaintiff's other assertions about why she believes the purported shipping labels at issue are Agency records have no merit. She states, for example, that the IRS has disclaimed ownership of the shipping labels on any boxes it may or may not have. *See* Pl.'s Mem. at 26 ("The IRS (which owns the records in the Stonehill boxes) has disclaimed ownership of the shipping labels."). Assuming the assertion is true that the IRS has "disclaimed ownership" of a shipping label on a box it may or may not have custody over, however, does not mean that the Agency has otherwise claimed ownership—or control—over a purported shipping label. To the contrary, it is more likely that neither agency ever claimed "ownership" or control over shipping labels on packages sent or received by them, and thus, cannot disclaim ownership over something that they never claimed ownership or control over in the first place. As stated in the Agency's opening brief, if shipping labels belong to anyone, they belong to FedEx, UPS, or the Postal Service to perform their duties.

Although it is not entirely clear, Plaintiff also seems to assert that the Agency should keep records of shipping labels if it does not already. *See id.* at 27, 31 ("The information on the mailing labels is no more difficult to upload on ARCIS that the information from OF-11's or Form 135's which are frequently submitted directly (and in some instances handwritten) to NARA and not entered online."). In a separate section of her brief, Plaintiff cites 5 U.S.C. § 552(a)(3)(B) for the proposition that an agency must provide a record that is "readily reproducible," and seems to argue that a shipping label is "readily reproducible." *See* Pl.'s Mem. at 36. But "[c]ourts—including the Supreme Court—have frequently held that documents that arguably could be captured and stored, but were not, are not 'agency records' for FOIA purposes." *Energy Pol'y Advocs. v. Dep't of Interior*, Civ. A. No. 21-1411 (JDB), 2023 WL 2585761, at *4 (D.D.C. Mar. 21, 2023); *see also Forsham v. Harris*, 445 U.S. 169, 182 (1980) (rejecting argument that "agency records" includes "all documents created by a private [party] to which the Government has access, and which the

Government has used"). Thus, although Plaintiff may be disappointed that the Agency does not retain shipping labels, the Agency is under no obligation to do so.

Plaintiff cites a few cases and argues that the reason why there is so little case law about whether a shipping label is an agency record is because "agencies do not dispute whether the mailing label is an agency record." Pl.'s Mem. at 35. Again, Plaintiff ignores that Defendant offered to produce the two labels it found on the boxes it searched for—without conceding that a shipping label was an agency record—to hopefully avoid briefing this issue. *See* Email from Escher (July 25, 2023, at 4:31 p.m.), ECF No. 28-5. Plaintiff declined the invitation and chose to brief the issue instead. *See* Email from Heggestad (July 25, 2023, at 8:25 p.m.), ECF No. 28-5.

In any event, none of the cases that Plaintiff cites supports her position, as none of the opinions analyzes the issue presently before the Court: whether a shipping label is an agency record.[5] Further, the case that the Agency cited in its opening brief, *International Brotherhood of Teamsters v. National Mediation Board*, 712 F.2d 1495, 1496 (D.C. Cir. 1983), is binding in this Circuit:

> The District Court then properly concluded that the Board's transitory possession of the labels, limited to the one-time, attach-and-post use required by the court order, did not constitute "control" of the labels by the Board, and that the labels

_____

[5]    One of the cases that Plaintiff cites, *International Refugee Assistance Project v. United States Citizens & Immigration Service*, 551 F. Supp. 3d 136 (S.D.N.Y 2021), is apparently miscited. Defendant understands Plaintiff intended instead to cite *Talley v. Department of Labor*, Civ. A. No. 19-0493, 2020 WL 3966312, at *2 (W.D. Mo. July 13, 2020).

Plaintiff also cites the Federal Records Act, 44 U.S.C. § 3301, in support of her argument that a shipping label is an agency record within the scope of FOIA. Pl.'s Mem. at 25. It has long been the law in this Circuit that the treatment of documents for disposal and retention purposes under various federal records management statutes, like the Federal Records Act, does not determine the documents' status under FOIA. *See, e.g., Elec. Priv. Info. Ctr. v. Drone Advisory Comm.*, 995 F.3d 993, 1004 (D.C. Cir. 2021).

were therefore not "agency records" subject to disclosure under the Freedom of Information Act.

*Id.* at 1496.

Plaintiff also asserts that there are "special policy considerations" for the Court to find that shipping labels are agency records within the scope of FOIA. Pl.'s Mem. at 33-34. She argues that "shipping labels contain the only information that is available for NARA to respond to Mrs. Stonehill's request for the names of Tax Division or IRS officials who had access to the IRS Stonehill records" and that there is "undisputed evidence that the IRS and Tax Division attorneys lied in two different judicial proceedings[.]" *Id.* The argument is meritless for numerous reasons.

First and foremost, Plaintiff misunderstands the caselaw about special policy considerations as it relates to FOIA. The D.C. Circuit has only ever relied on special policy considerations to find that records were not subject to FOIA because of separation-of-powers concerns. *See Jud. Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208 (D.C. Cir. 2013). There are no separation-of-powers concerns here, and thus no special policy considerations to consider. And even if there were, if anything, it would mean that the shipping labels which Plaintiff seeks would be outside the scope of FOIA, which only further hurts her position.

Plaintiff's other assertions about why there are special policy considerations are similarly incorrect. The Agency has produced a plethora of documents and records available, as detailed in its opening brief, so the assertion that shipping labels "contain the only information available" is incorrect. Despite Plaintiff's years-long accusations of fraud, misconduct, and coverups by the government, the Ninth Circuit found more than a decade ago that there was no fraud on the court during any of the Stonehill litigation. *United States v. Est. of Stonehill*, 660 F.3d 415, 451-52 (9th Cir. 2011) ("Taking into consideration all of Taxpayers' contentions, we conclude that the government did not commit fraud on the court."). And even if there were a hint of bad faith

9

anywhere in the decades of litigation that the Stonehill events have yielded, there is no way that a shipping label on a cardboard box mailed twenty years ago (again, assuming shipping labels were used for all the boxes), wherever the box or label is in present day, would reveal anything one way or another to make it a special policy consideration.

Most notable about all this is that Plaintiff's position about shipping labels here defies common sense. Under Plaintiff's theory, rather than rely on address information contained in the Archives and Records Centers Information System, the Agency keeps a copy of every shipping label it generated in the past (which, in Plaintiff's view, only the Agency generates, not FedEx or UPS), or it tracks down packages it sent out in the past to ascertain shipping information when it needs to ship something. If the Agency has never shipped something to a particular address before, then the Agency is out of luck because it does not have a prior shipping label from which to ascertain the address to which to ship a package. No reasonable jury would believe this baseless theory.

As best as Defense counsel has been able to surmise, Plaintiff is advancing this argument about shipping labels because she seeks information that is not contained in the records already produced to her:

> In this action, the shipping labels placed on IRS boxes of Stonehill records are especially important to fulfill NARA's function of managing the Stonehill records, because the OF-11's prepared by the IRS or the Tax Division have for the most part been destroyed and the information entered into ARCIS for some inexplicable reason does not include the name of the Agency returning the records or originally requesting the records. The only source of this information for the IRS Stonehill boxes is the shipping labels. And those are the only documents available to NARA to perform its function of managing the Stonehill IRS records.

Pl.'s Mem. at 30-31; *see also id.* at 26 ("The only difference in this action is that other than the original Form 135's and a few of the OF-11's, most all of those forms have either been 'lost' or 'destroyed' and for some inexplicable reason the information on those forms was not entered into

the ARCIS system beginning in 2009."); *id.* at 27, 31 ("But the information on the transfer of the Stonehill IRS boxes to the Tax Division and to the IRS is not recorded in ARCIS and it was omitted from the excel sheets provided to Mrs. Stonehill by the IRS and by NARA which detail refile information.").

Defendant will address the adequacy of its search for documents already produced to Plaintiff in the next section below, but, as it pertains to shipping labels, the Freedom of Information Act is a tool to request documents or records from a federal agency. While the documents or records requested may contain information that a requester seeks, ultimately, the statute only allows a person or an entity to request documents or records. If the documents and records that an agency produces within the scope of FOIA do not answer a requester's questions, or do not contain the information that the plaintiff seeks, that does not convert other records which are clearly outside the scope of FOIA—like shipping labels—into records within the scope of FOIA. *Cf. Powell v. Internal Revenue Serv.,* 255 F. Supp. 3d 33, 43 (D.D.C. 2017) ("Critically, though, FOIA only requires that an agency turn over *records*, not that it provide a requestor with specific information or answer questions." (emphasis in original)); *Jordan v. Drug Enf't Admin.*, Civ. A. No. 22-2195 (JEB), 2023 WL 2809132, at *3 (D.D.C. Apr. 6, 2023) ("Courts have thus used the term 'records' synonymously with 'documents'; in other words, the Government need not provide *information* that is separate from documents themselves." (emphasis in original)).

For the reasons above, the Court should find that whatever shipping labels may or may not have been created in the past, and which may or may not have been affixed to boxes, and which may or may not have been shipped to the IRS or the Tax Division via FedEx or UPS, and which may or may not still exist, are not agency records within the scope of FOIA.

11

## II.    **The Agency Performed an Adequate Search**

"To prevail on summary judgment, an 'agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested,' which it can do by submitting '[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched.'" *Shapiro v. Dep't of Just.*, 40 F.4th 609, 612-13 (D.C. Cir. 2022) (citations omitted). "In a FOIA case, a district court is not tasked with uncovering 'whether there might exist any other documents possibly responsive to the request,' but instead, asks only whether 'the search for [the requested] documents was adequate.'" *Id.* at 613 (citation omitted). "[T]he fact that a particular document was not found does not demonstrate the inadequacy of a search." *Boyd v. Dep't of Just.*, 475 F.3d 381, 391 (D.C. Cir. 2007). "There is no requirement that an agency search every record system[,]" only the systems that are "reasonably expected to produce the information requested." *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

Here, as detailed in the Agency's opening brief, it has conducted an adequate search. The Agency's search for responsive records included:

a.    Searching records and emails of Washington National Records Center employees;

b.    Searching Archives Information System data on these transfers;

c.    Searching a separate server maintained for searching and retrieval of scanned SF-135 forms created prior to the Archives Information System;

d.    Searching file cabinets at the Washington National Records Center that contain hard-copy forms where the contents of the documents may not have been transferred to the Archives Information System;

e.    Searching electronic storage drives where employee working files are kept;

      f.      Physically searching the shelving areas in the vicinity of the storage location of the subject boxes; and

      g.      Manually searching water event reports involving the subject boxes.

Scanlon Decl. ¶ 26, ECF No. 21-2; 2d Scanlon Decl. ¶¶ 5-6, ECF No. 28-2.

While the adequacy of a search is determined not by what is found but by what was done, for all three requests, the productions included sixteen OF-11 forms, four SF-135 forms, three workbooks of six sheets containing Archives Information System data, 288 PDF pages of email communications, 211 PDF pages of label reports from Archives Information System data, one Archives Information System reference request, and an After Action Report. Scanlon Decl. ¶ 45; 2d Scanlon Decl. ¶ 8. All files reasonably expected to contain the requested records were searched in response to the Plaintiff's FOIA requests. Scanlon Decl. ¶ 46.

On September 22, 2023, the Agency initiated additional searches for responsive records, which included searches for shipping information, as described above, and additional reference requests (OF-11 forms) by customer agencies for any box under transfer number 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. As fully described in the second declaration of Joseph Scanlon, the Agency discovered and produced an After Action Report dated April 1, 2013, related to a water event involving the subject boxes.[6] This discovery occurred after the Agency searched Archives Information System data again by transfer number, examined audit trail data, physically searched the shelving areas in the vicinity of the storage location of the boxes, discovered old, used absorbent pads, typically used after a water event, on the top shelf of this storage area, and subsequently manually searched water event

---

[6]      After Action Reports are filed and retrieved by date of the water event and subfiled by stack location. These records are not filed by transfer number or otherwise reflected in the Archives Information System. Therefore, when the Agency searched for records by transfer numbers provided by the Plaintiff, the report did not appear in the Agency's prior search results. 2d Scanlon Decl. ¶¶ 7-8.

reports. The Agency's efforts to investigate Archives Information System entries indicating a "refile" of some boxes in May 2013 led to the conclusion that the re-boxing and re-shelving of the boxes after the water event had been logged as a refile in Archives Information System. The Agency did not find any agency records reflecting any return of the subject boxes to the Agency from a customer agency in May 2013. Although Plaintiff claims the Agency failed to produce certain OF-11 forms connected to refiles in May 2013, it is clear such records do not exist.

Plaintiff's opposition to the Agency's search can be summarized in two ways.[7] First, the Agency has not produced the information that Plaintiff is seeking, so the search was deficient. *See, e.g.*, Pl.'s Mem. at 18 ("NARA has not conducted an adequate search for that information."); *id.* at 36 ("Mrs. Stonehill is requesting the information on the labels for each of the 86 (89) boxes that were transferred to the Department of Justice Tax Division."); *id.* at 36 ("However, the refile sheet has no contact information after the first entry for Annette Mitchell ("Mitchell")."); *id.* at 39 ("NARA has provided Asset labels which contain no information about the person or agency requesting the refile."); *id.* at 39 ("The refile labels contain only the date on which a specific box was returned to NARA. The labels contain no information identifying the agency or the individual who returned the box."); *id.* at 40 ("The information on those Form 11's should still be available at the WNRC."); *id.* at 42 ("NARA has not identified responsive Refile information."); *id.* at 43

---

[7]    Plaintiff's brief, at times, is confusing to follow. For example, on page 35, Plaintiff has the heading, "NARA has not conducted an Adequate Search for Documents Relating to . . . shipping labels." Pl.'s Mem. at 35. Immediately beneath that heading, however, Plaintiff titles the next subheading, "NARA Does not Have to Search for the Shipping Labels." *Id.* It is unclear, therefore, whether or not Plaintiff is contesting a search for shipping labels. By way of further example, on page 39, Plaintiff has the heading, "NARA has provided Asset labels which contain no information about the person or agency requesting the refile." *Id.* at 39. But then in the paragraph immediately below the heading, Plaintiff writes, "there has been no production of the asset labels[.]" *Id.* By way of still further example, some of the information is duplicative. For example, on page 39, Plaintiff titles a heading, "NARA has not produced Shipping Labels or Cover Sheets." *Id.* at 39. Later, Plaintiff titles another heading, "NARA has not produced Cover sheets." *Id.* at 42.

("Mrs. Stonehill is entitled to any refile information through May 24, 2023. If there are refiles after January 18, 2017, NARA did not conduct an adequate search.").

Second, Plaintiff believes that documents should exist that were not produced, thus arguing that the Agency did not conduct an adequate search. *See, e.g.*, *id.* at 39 ("NARA has not produced Shipping Labels or Cover Sheets."); *id.* at 40 ("NARA did not identify or produce the shipping labels or cover sheets described by Pinkney as responsive to Mrs. Stonehill's FOIA request."); *id.* at 40 ("NARA has not produced Form 11's filed after 2009."); *id.* at 40 ("The Form 11's for Stonehill IRS boxes requested after 12/08/09 thru 5/15/13 described below should be available in ARCIS."); *id.* at 42 ("NARA has not produced Cover sheets.").

Each argument fails. Regarding the first, as discussed, FOIA is a statute that allows a requester to request records. *Powell*, 255 F. Supp. 3d at 43 ("Critically, though, FOIA only requires that an agency turn over *records*, not that it provide a requestor with specific information or answer questions." (emphasis in original)); *Jordan*, 2023 WL 2809132, at *3 ("Courts have thus used the term 'records' synonymously with 'documents'; in other words, the Government need not provide *information* that is separate from documents themselves." (emphasis in original)). If the documents and records do not contain the information that the requester seeks, it does not mean that the Agency has failed to conduct an adequate search under FOIA.

Here, given Plaintiff's apparent belief in a government conspiracy to target her husband and her, she plainly seeks information about who had access to the boxes about her husband and her to support her accusations of government wrongdoing. Pl.'s Mem. at 6 ("As discussed herein, those efforts have been thwarted through various government wrongdoing, apparently ranging from mere negligence and sloth to false statements and representations to various courts, to outright apparent destruction of incriminating documents, to which we believe culpable

individuals were given access."); *id.* at 16-17 ("The documents and information recently obtained from NARA reveal a pattern of extraordinary government misconduct which was intended to prevent the disclosure of documents that ironically were critical to what were already fraud on the court proceedings where this vital evidence was withheld. It is, respectfully, breathtaking—when done by any party, but even more so when committed by our own Government.").

But if a certain document produced does not have information that Plaintiff seeks, i.e., who had access to the boxes, that does not mean that the Agency failed to fulfill its FOIA obligations. Here is an example of an asset label, about which Plaintiff complains, "NARA has provided Asset labels which contain no information about the person or agency requesting the refile." *Id.* at 39.



While Plaintiff may be upset that an asset label does not reveal the information she seeks, this does not mean that the Agency conducted an inadequate search or otherwise failed to fulfill its obligations under FOIA. *See Cal. Air Res. Bd. v. EPA*, Civ. A. No. 19-965 (CKK), 2020 WL 2934914, at *3 (D.D.C. June 3, 2020) ("FOIA neither requires an agency to answer questions disguised as a FOIA request or to create documents or opinions in response to an individual's request for information." (quoting *Hudgins v. IRS*, 620 F. Supp. 19, 21 (D.D.C. 1985)).

Second, "[i]n a FOIA case, a district court is not tasked with uncovering 'whether there might exist any other documents possibly responsive to the request,' but instead, asks only whether 'the search for [the requested] documents was adequate.'" *Shapiro*, 40 F.4th at 613 (citations

16

omitted). "[T]he fact that a particular document was not found does not demonstrate the inadequacy of a search." *Boyd*, 475 F.3d at 391. The rest of Plaintiff's brief argues that documents should exist but do not. *See* Pl.'s Mem. at 40 ("NARA has not produced Form 11's filed after 2009."); *id.* at 42 ("NARA has not identified responsive Refile information"); *id.* at 42 ("NARA has not produced Cover sheets."). But as explained in the Agency's opening brief, and as summarized above, the Agency has searched all locations reasonably likely to contain responsive documents. "[T]hat a particular document was not found does not demonstrate the inadequacy of a search."[8] *Boyd*, 475 F.3d at 391. "It is well settled that an agency is not required by FOIA to create a document that does not exist in order to satisfy a request." *Yeager v. DEA*, 678 F.2d 315, 321 (D.C. Cir. 1982). And while some records which may have existed in the past but were destroyed as part of their regular retention schedules, *see, e.g.*, Scanlon Decl. ¶ 25 ("SF-135 and OF-11 forms are designated temporary records. OF-11 forms are scheduled for destruction after 3 years. SF-135 forms are scheduled for destruction after 75 years."); NARA Records Schedule, *available at* https://www.archives.gov/files/about/records-schedule/nara-records-schedule-list.pdf, a "requester is entitled only to records that an agency has in fact chosen to create and retain." *Id.* Thus, while some records may have been discarded as part of a retention schedule, the Agency "need not obtain or regain possession of a record in order to satisfy a FOIA request." *Id.*

---

[8]    Some of the documents that Plaintiff complains about are not within the scope of FOIA. For example, as extensively demonstrated above, shipping labels are not agency records under FOIA. Further, Plaintiff argues that the Agency should have produced cover sheets because of an email that said, "the cover sheets we found within the box[.]" As explained in the Agency's opening brief, which Plaintiff acknowledges, the contents of a box are within the legal custody of the respective agency. *See* 36 C.F.R. § 1233.18(a) ("Agency records transferred to a NARA Federal Records Center remain in the legal custody of the agency."). Thus, the cover sheets would be the other agency's records.

Thus, as explained, the Agency performed an adequate search in response to Plaintiff's three requests.

## III.    <u>Criminal Division Supplement</u>

On September 28, 2023, Plaintiff moved to amend her opposition and cross motion to argue that the Agency did not conduct an adequate search for records pertaining to the Criminal Division files. *See* Pl.'s Mem. at 43-49. Fortunately, the Agency did not just argue in its opening brief that it performed an adequate search for records pertaining to the IRS or the Tax Division; the Agency showed in its opening brief that it conducted an adequate search for records pertaining to the Criminal Division, as well. The Agency demonstrated that its searches for records for the three requests at issue in this case were adequate, which includes records for the IRS, the Tax Division, and the Criminal Division. Further, both the original and second declarations of Joseph A. Scanlon detail the Agency's searches for all records, not just for records from the IRS or the Tax Division, but from the Criminal Division as well. Plaintiff's arguments in response are unpersuasive.

### A.    Transfer Numbers W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 and W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

The Agency informed Plaintiff on April 14, 2023:

> W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 and W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 have not been destroyed and are currently shelved at the Washington National Records Center. W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 was permanently withdrawn by Les Rowe in Oct of 1999 (see W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 OF-11).

Letter from NARA (Apr. 14, 2023), ECF No. 21-3 at 121.[9]

As best the Agency understands, Plaintiff believes that the Agency should search inside the boxes for the two transfer numbers (W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 and W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) that the Criminal

---

[9]    Upon further discussions with the Criminal Division, it was determined that at the time this letter was issued, Box One of W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 was already in the possession of the Criminal Division. Moreover, as of the date of this filing, the Criminal Division is in possession of all boxes associated with W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 and W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.

Division has withdrawn from the Washington National Records Center. As is clear from the numerous filings in this case, Plaintiff is convinced that the government has engaged in misconduct, fraud, and criminal conspiracy for decades. Plaintiff wants assurances from the Agency that since the Criminal Division has retrieved its boxes from the Agency, that the Agency will ensure that the records are preserved, and the Criminal Division does not destroy them. This is the reason why Plaintiff cites the numerous emails her counsel sent to undersigned in April 2023. This was also the crux of Plaintiff's Opposition to Defendant's Request for Extension to File Joint Status Report filed in May 2023, *see* ECF Nos. 16-18, which the Court disregarded, *see* Min. Order (May 12, 2023).

> However, the Agency has also repeatedly informed Plaintiff:

> Agency records transferred to a NARA Federal Records Center remain in the legal custody of the agency. NARA acts as the agency's agent in maintaining the records. NARA will not disclose the record except to the agency that maintains the record, or under rules established by that agency which are consistent with existing laws.

36 C.F.R. § 1233.18(a).

> Further, as stated by the D.C. Circuit:

> The main function of the Archives is to preserve documents of enduring value from all three branches of government. The Archives does not use documents created in the three branches in any operational way, or indeed in any way comparable to any other federal agency. It may control them in a sense, but its control consists in cataloguing, storing, and preserving, not unlike a "warehouse." Variances in this sort of "control" are entirely unhelpful in determining a record's value to a FOIA requester, and irrelevant to any withholding prerogative that may remain with the transferor.

*Cause of Action*, 753 F.3d at 215-16 (citations omitted).

> Thus, while Plaintiff may want the Agency to search inside the boxes related to the Criminal Division to ensure that the Criminal Division is not destroying any records, the Agency cannot do that. As is clear from both the federal regulation and Circuit precedent, even if NARA still had physical possession of the Criminal Division's records, NARA does not have legal

custody over them. NARA explained this to Plaintiff several times. Records housed at a NARA Federal Records Center belong to the originating agency that transferred the records to the Center. NARA does not dictate when the originating agency requests the records back, or what the originating agency does or does not do with its records after NARA sends records back to an originating agency. The records belong to the originating agency, not NARA.

Plaintiff seems to argue that two Agency records—an SF-135 and an OF-11—could be inside the Criminal Division boxes, so the Agency should search inside the boxes to see if any of the two records exist. *See* Pl.'s Mem. at 45-48. As a starting matter, it was difficult to find the source that Plaintiff cites to support her assertion that the Agency should search inside the boxes that belong to the Criminal Division, again, assuming the Agency still had the boxes of records. After further research, it appears Plaintiff is relying on a declaration from Helene R. Newsome, who was an attorney for the IRS in the Office of Chief Counsel. The declaration was executed on March 31, 2022, was filed in *Stonehill v. IRS*, Civ. A. No. 19-3644 (RDM) (D.D.C.), and can be found on the docket of this case, ECF No. 11-11 at 17-37.[10]

In the declaration, Newsome states that Christopher Pinkney, who was the Acting Director of the Washington National Records Center, directed the Agency to search inside the IRS boxes for responsive records and found four OF-11 forms. *See* 2d Newsome Decl. ¶¶ 69-70, ECF No. 11-11 at 32-33. Based on this information, Plaintiff seems to argue that the Agency should

---

[10]    Ironically, Plaintiff's reliance on the declaration is inconsistent. On one hand, Plaintiff relies on the declaration of Newsome to argue that the Agency did not perform an adequate search. On the other, she continually accuses Newsome of falsifying the declaration and trying to falsify records in the IRS case. *See* Pl.'s Mot. at 36-38; *see also id.* at 31 ("If NARA had agreed with Newsome's request it would have falsely confirmed that the IRS, not the Tax Division, was the only agency that had requested the Stonehill boxes[.]").

search inside the Criminal Division boxes to confirm whether any SF-135 or OF-11 forms are inside. Not so.

As an initial matter, it bears mentioning that Plaintiff mischaracterizes the circumstances of the search in *Stonehill v. IRS*. When the Agency searched the IRS boxes in *Stonehill v. IRS*, it did so because of a FOIA request to the IRS, not the Agency. The Agency was acting as an agent for the IRS under the circumstances. Here, the three FOIA requests at issue were addressed to the Agency.

Further, not only does Plaintiff mischaracterize the circumstances of the search in *Stonehill v. IRS*, but she also mischaracterizes the sources that she relies on to argue that the Agency should search inside boxes for responsive records. Pinkney did not describe "what he believed would be procedures for an adequate search for information regarding who had access to agency records stored at NARA," as Plaintiff again states in conclusory fashion in her motion. *See* Pl.'s Mem. at 45. Yet the evidence shows that the Agency did not believe that there would be any responsive records inside the IRS boxes. The Agency chose to search inside the IRS boxes in hopes that the searcher might get "really lucky":

> The only suggestion I could make at this date would be for Ivan, Shareef, or a designee to go into the WNRC stacks, open each of the 89 boxes, and see if they can find a name or names on the old DOJ cover sheets that were in some of the containers. That's admittedly a very long shot. But, if the searcher gets really lucky, we might have additional information that could help answer Question #1 above and determine whom within Tax Division was associated with the review.

Email from Pinkney (Aug. 10, 2021), ECF No. 26-4 at 16-17.

Thus, although Plaintiff continually characterizes the Agency's decision to search inside the IRS boxes as setting the standard of an adequate search, that is not true. The Agency acknowledged that it was a "very long shot" but decided to do it anyway in hopes of getting "really lucky." The standard for whether an agency performs an adequate search is whether "it made a

good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby*, 920 F.2d at 68. When the Agency searched the IRS boxes in hopes of getting "really lucky," clearly, it was not just trying to meet the standard; it was exceeding it. This is supported by the fact that when the Agency did perform a manual search of the eighty-nine IRS boxes, the Agency only discovered four OF-11 forms, which equates to about a four percent success rate.

This result makes sense. As stated earlier, an OF-11 form has a disposition schedule of three years. *See* Scanlon Decl. ¶ 25. There is no reason to believe, therefore, that a manual search of the Criminal Division boxes would reveal records that are normally disposed of after three years. To the extent that any were found, it truly was "really lucky." If any OF-11 forms exist, as stated in the declaration of Scanlon, they likely would be in the Archives Information System. *See* Scanlon Decl. ¶ 11 ("Prior to the deployment of ARCIS in 2009, agencies submitted paper OF 11 forms to retrieve records from FRCs. Since the deployment of ARCIS, agencies primarily submit these requests via ARCIS."). The Agency searched the Archives Information System for reference requests (OF-11 forms) and produced a spreadsheet of all reference requests since May 1, 2007, including those not involving the subject transfer numbers in the instant litigation. *See* Letter from NARA (Apr. 14, 2023), ECF No. 21-3 at 121 ("Refer to spreadsheets titled Reference Requests - OF11s ^64 Criminal Division and Reference Requests - OF11s ^64 Tax Division for a list of the reference requests between 5/1/2009 and 7/l/2022 from the [ ] Criminal and Tax Divisions found in ARCIS." (emphasis in original omitted)). The spreadsheet reflects that the Criminal Division made one withdrawal request for transfer number W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. *See id.* The Agency searched all locations reasonably likely to contain OF-11 forms or reference requests.

Regarding the SF-135 forms, it is not clear what the issue is. As Plaintiff acknowledged in her motion, the Agency already found and produced the SF-135 forms for the Criminal Division records. The SF-135 for transfer number W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 can be found at ECF No. 26-2 at 3.[11] The SF-135 for transfer number W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 can be found at ECF No. 26-2 at 18 or 22. The SF-135 for transfer number W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 can be found at ECF No. 26-2 at 20. *See also* Letter from NARA (Apr. 14, 2023), ECF No. 21-3 at 121 ("Standard Forms 135 for W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, W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, and W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 were *released to you under interim release dated February 2, 2023*." (emphasis in original)). It is unclear why Plaintiff contends that the Agency must perform a search to find documents that have already been found and produced to her.

For the reasons above, the Agency performed an adequate search for Agency records as they pertain to the Criminal Division records related to transfer numbers W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 and W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.

### B.    Transfer Number W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

Plaintiff argues that the Agency "has never confirmed that it searched NARA College Park for 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 as a permanent collection." Pl.'s Mem. at 48-49. Simply put, there was no need to. Agency records show that "W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 was permanently withdrawn by Les Rowe in Oct of 1999." Letter from NARA (Apr. 14, 2023), ECF No. 21-3 at 121. The Agency would not have records accessioned at College Park that were permanently withdrawn by the originating agency under transfer number W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. *See* 2d Scanlon Decl. ¶ 9, ECF No. 28-2.

---

[11]    As explained, the Agency no longer has the records associated with this transfer number. the Agency records show that the records associated with this transfer number were permanently withdrawn by Les Rowe in October 1999. That the Agency happened to have found its associated SF-135 was "really lucky."

## CONCLUSION

For the reasons above, as well as those explained in Defendant's opening brief, the Court should enter summary judgment for the Agency and deny summary judgment for Plaintiff.

Date:  November 2, 2023
   Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar. #481052
United States Attorney

BRIAN P. HUDAK,
Chief, Civil Division

By:   */s/ Sam Escher*
   SAM ESCHER, D.C. Bar #1655538
   Assistant United States Attorney
   601 D Street, N.W.
   Washington, D.C. 20530
   (202) 252-2531
   Sam.Escher@usdoj.gov

*Attorneys for the United States of America*