UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PAULINE DALE STONEHILL,

    *Plaintiff*,

v.

NATIONAL ARCHIVES AND RECORDS ADMINISTRATION,

    *Defendant*.

Civil Action No. 1:22-cv-3391 (CJN)

**MEMORANDUM OPINION**

Before the Court in this FOIA action are the parties' cross-motions for summary judgment and a motion to substitute a new party in place of the now-deceased plaintiff, Pauline Dale Stonehill. ECF No. 21 (Def's Mot.); ECF No. 26-1 (Stonehill Mot.); ECF No. 33 (Substitution Mot.). For the reasons explained below, the Court will grant summary judgment in favor of the defendant, the National Archives and Records Administration, and will grant the motion to substitute Dr. Patrick Lenz as plaintiff.

**I. Background**

This case partakes in a long saga of FOIA litigation over documents related to civil and criminal tax proceedings conducted in the 1960s and 1970s against Harry Stonehill, an American expatriate with extensive business dealings in the Philippines. *See generally* ECF No. 11 (Compl.). In this chapter of the saga, Pauline Stonehill—Mr. Stonehill's widow and the co-executor of his estate—sought records relating to documents that the IRS and DOJ transferred to NARA after their tax proceedings against Mr. Stonehill concluded. *Id.* ¶¶ 1–3; *see also* ECF No. 21-2 (Scanlon Decl.) ¶¶ 13–14, 16, 19 (FOIA requests).

1

NARA operates warehouses throughout the country, called federal records centers, that serve as repositories for agency records no longer in immediate use. Scanlon Decl. ¶ 7; *see also* 44 U.S.C. §§ 2907, 3103. After an agency (like the IRS or DOJ) transfers records to a federal records center, the agency is free to retrieve and return them as needed. *See* Scanlon Decl. ¶¶ 8–12; *see also* 36 C.F.R. § 1233.18(a) ("Agency records transferred to a NARA Federal Records Center remain in the legal custody of the agency."). Only when records are "accessioned" through a separate and more formal transfer process does their legal custody pass from the agency to NARA itself. *See* 36 C.F.R. § 1235.22; *see also* Def's Mot. at 5

In the FOIA requests at issue here, Mrs. Stonehill did not seek IRS or DOJ documents, whether held by NARA or otherwise. Instead, Mrs. Stonehill sought from NARA "all records and documents" "related to [NARA's] storage, transfer, and review" of IRS and DOJ records about the Stonehill proceedings—all of which are now stored at NARA's Washington National Records Center. Scanlon Decl. ¶¶ 13, 16, 19, 23. Her three requests differ only slightly (regarding their cut-off dates and the underlying tranches, or "transfers," of IRS and DOJ documents to which they pertain).[1] *Id.* ¶¶ 13, 16, 19. In response, NARA produced: (1) four paper forms memorializing the agencies' transfer of Stonehill records to the Washington National Records Center, called SF-135s; (2) sixteen paper forms memorializing the agencies' subsequent retrieval and return of Stonehill records to/from the Washington National Records Center, called OF-11s; (3) one electronic request for retrieval/return of records contained in a NARA database known as the Archives and Records Centers Information System (ARCIS); (4) six sheets of ARCIS data; (5)

---

[1] Mrs. Stonehill subsequently served NARA with five additional FOIA requests that are nearly identical to her first three. *See* Scanlon Decl. at 5 n.1; ECF Nos. 21-4, 28-3, 28-4. Her fourth through eighth requests are not at issue in this litigation. Def.'s Mot. at 3; ECF No. 29 (Def's Reply) at 1 n.2.

211 PDF pages of "label reports" from ARCIS data; and (6) 288 PDF pages of email communications.  *Id.* ¶ 45.

After production was complete, the parties reached an impasse regarding the adequacy of the search.  *See* ECF No. 20.  Cross motions for summary judgment followed.  *See* Def's Mot.; Stonehill Mot.  Before those motions were fully briefed, Mrs. Stonehill died, ECF No. 33-2, and her counsel, Robert Heggestad, moved to substitute Dr. Patrick Lenz, the only surviving co-executor of Mr. Stonehill's estate, as plaintiff.[2]  *See generally* Substitution Mot.  NARA opposed that motion.  ECF No. 39 (Substitution Opp.).

### I. Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "In the FOIA context, summary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith."  *Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 584 (D.C. Cir. 2020) (internal alteration and quotation marks omitted).

---

[2] Heggestad initially moved to jointly substitute both himself and Dr. Lenz as plaintiffs. *See* Substitution Mot. at 1–2.  But in his reply in support of substitution, Heggestad indicated that he was "no longer requesting that he be jointly substituted."  ECF No. 41 (Substitution Reply) at 3 n.1.  For the reasons discussed below, the Court grants the motion as to Lenz, and thus refers to Lenz as the plaintiff for the remainder of this opinion, unless otherwise noted.

## II. Analysis

### A. Adequacy of the Search

"To prevail on summary judgment [in a FOIA case], an agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Shapiro v. United States Dep't of Just.*, 40 F.4th 609, 612 (D.C. Cir. 2022) (internal quotation marks omitted). The Court is persuaded that NARA has made that showing here. As its FOIA Officer explained in a detailed affidavit, NARA maintains three categories of records regarding the transfer, storage, and review of the agency documents it safeguards at its Washington National Records Center. Scanlon Decl. ¶ 24. Those are: (1) SF-135 forms documenting the transmittal of records to the Archives, (2) OF-11 forms documenting agency "reference requests," or requests to obtain records stored at the Archives, and (3) ARCIS data on the storage location and refiling of agency documents at the Archives. *Id.* ¶¶ 9, 11–12, 24. NARA probed each of those three records categories when responding to Stonehill's FOIA requests.

To start, NARA required Center employees to search their paper records, electronic files, and email accounts for all records—including SF-135s and OF-11s—related to the four transfers of IRS and DOJ documents identified in Stonehill's three FOIA requests. *Id.* ¶ 27. NARA also searched for responsive records in its ARCIS database, which is the "primary tool for tracking status and location of records at [the Washington National Records Center]." *Id.* ¶¶ 28, 30. ARCIS contains records "on all shipments by NARA of records storage boxes," and allows users to "search for any reference requests or refiles [of agency records] after the deployment of the ARCIS system in 2009." *Id.* ¶ 28; ECF No. 28-2 (2d Scanlon Decl.) ¶ 4. Finally, in an effort to uncover any pre-2009 SF-135s, NARA additionally searched a "separate server maintained for searching and

4

retrieval of scanned SF-135 forms created prior to [ARCIS]." Scanlon Decl. ¶ 26. In sum, NARA searched both the physical and electronic file systems of the Washington National Records Center—the "only" place where the records identified in Stonehill's request were stored and thus "the only place where responsive information [wa]s likely to be located." *Id.* ¶ 30. That extensive search satisfied its obligation to make a "good faith effort" to find the records identified in Stonehill's requests.[3] *Shapiro*, 40 F.4th at 612.

Lenz, substituting for Stonehill, nevertheless argues that, for four reasons, this search was inadequate. None is persuasive.

*First*, Lenz argues that NARA failed to search for shipping labels supposedly posted on boxes containing the IRS's and DOJ's Stonehill records. Stonehill Mot. at 13. But an agency need only search for "agency records." *U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 142 (1989). To qualify as agency records, requested materials must satisfy two criteria. *Id.* at 144. "First, an agency must either create or obtain" them. *Id.* (internal quotation marks omitted). "Second, the agency must be in control of [them] at the time the FOIA request is made." *Id.* at 145. "Factors that determine whether an agency controls a document may include: '(1) the intent of the document's creator to retain or relinquish control over the records; (2) the ability of the agency to use and dispose of the record as it sees fit; (3) the extent to which agency personnel have read or relied upon the document; and (4) the degree to which the document was integrated into the agency's record system or files.'" *Cause of Action Inst. v. Off. of Mgmt. & Budget*, 10 F.4th 849,

---

[3] It is emblematic of the thoroughness of NARA's search that—by searching ARCIS for reference requests on the Stonehill records, noting that some of the records were listed as "refiled" absent an associated reference request, physically searching the shelving area where were those records were stored, and observing absorbent pads on the shelf—it was able to discover that certain Stonehill records had been affected by a "water event" in 2011 and were subsequently re-boxed and reshelved. 2d Scanlon Decl. ¶¶ 5–6.

855 (D.C. Cir. 2021) (quoting *Burka v. U.S. Dep't of Health & Hum. Servs.*, 87 F.3d 508, 515 (D.C. Cir. 1996) (cleaned up)). "The burden is on the agency to demonstrate, not the requester to disprove, that the materials sought are not 'agency records.'" *Tax Analysts*, 492 U.S. at 142 n.3.

NARA has carried its burden of demonstrating that the mailing labels are not agency records. NARA does not argue that it did not "create" any responsive shipping labels, which it apparently affixed to boxes of Stonehill documents that it returned by mail to the IRS or to DOJ's Tax Division between 2001 and 2003. *See* Stonehill Mot. at 17; ECF No. 29 (Def's Reply) at 2, 4–5. But relying on the four *Burka* factors, NARA argues that it does not exercise sufficient "control" over the shipping labels to make them agency records. Def's Mot at 8–10. The Court agrees.

To start, NARA did not "inten[d]" to retain control over the labels, nor did it actually do so. To the contrary, NARA created the labels for the very purpose of transporting boxes—and the labels atop them—*out* of its custody. Even if it is true that such boxes could in theory be returned to NARA with their labels still attached, that event is by no means a foregone conclusion. The first *Burka* factor thus strongly favors the conclusion that the labels are not agency records. *See Int'l Bhd. Of Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Nat'l Mediation Bd.*, 712 F.2d 1495, 1496 (D.C. Cir. 1983) (Scalia, J.) (holding that agency's "transitory possession" of shipping labels, limited to "one-time, attach-and-post use," did not constitute "control" subjecting the labels to FOIA).

The remaining *Burka* factors point in the same direction. Because NARA does not ordinarily keep (or intend to keep) shipping labels, it is not at liberty to "use" and "dispose of" shipping labels "as it sees fit." Instead, it is largely powerless to control what happens to the labels once the boxes are in the mail. Nor, turning to the third and fourth factors, does NARA "rely" on

6

shipping labels to carry out its records-safekeeping mission, such as by "integrat[ing]" them into its system for tracking those records. As NARA explains, if it "needs mailing information about an agency, [that information] is contained in a system like ARCIS." Def's Mot. at 9. And "to organize records, NARA uses ARCIS Transfer Numbers, not shipping labels": it is "not taking pictures of the labels and uploading them" to any electronic filing system. *Id.*; *see Energy Pol'y Advocs. v. Dep't of Interior*, 2023 WL 2585761, at *4 (D.D.C. 2023) ("[D]ocuments that arguably could be captured and stored, but were not, are not 'agency records' for FOIA purposes."). Indeed, Lenz himself admits that, from an informational perspective, shipping labels "serve the same function" as the SF-135 and OF-11 forms. Stonehill Mot. at 22. Lenz's contention that the mailing labels constitute an alternate system of "record[s] to document which agencies have had access to the [agency] records" stored at NARA makes little sense considering that, once NARA has shipped the records in question back to the agency, there is no guarantee it will see the mailing labels again. *Id.* at 21.

Lenz asserts that, here, the shipping labels are in fact the "only source of [] information" about which agencies accessed the Stonehill records stored at NARA, "because the OF-11's [*sic*] prepared by the IRS or the Tax Division have for the most part been destroyed and the information entered into ARCIS . . . does not include the name of the Agency returning the records or originally requesting the records." *Id.* at 26–27. Even if this were true, it is beside the point. Whether a material is the only source of certain information has no bearing on its status as an agency record; instead, that status depends largely on the factors discussed above.[4] *See, e.g.*, *Cause of Action*

---

[4] The alleged fact that the shipping labels are the only available source of information as to which agency officials accessed the Stonehill documents also does not constitute a "special policy consideration[]" warranting a relaxed application of the control test. Stonehill Mot. at 29. The case Lenz cites for that proposition, *Paisley v. C.I.A.*, 712 F.2d 686 (D.C. Cir. 1983), is wholly inapposite. *See id.* at 693 n.30 (describing the "special policy considerations which counsel in

*Inst.*, 10 F.4th at 858–59 (concluding that browsing histories of agency employees were not agency records where those histories had not otherwise been digitally preserved); *see also Powell v. Internal Revenue Serv.*, 255 F. Supp. 3d 33, 43 (D.D.C. 2017) (explaining that FOIA does not require an agency to "provide a requestor with specific information or answer questions"). Here, after evaluating the *Burka* factors within the totality of the circumstances—which reflect that NARA sought to mail rather than to control the shipping labels and that it uses separate records to document the information that the labels contain—the Court concludes that the labels are not agency records. *See Cause of Action Inst.*, 10 F.4th at 855. NARA did not need to search for them to conduct an adequate search.

*Second*, Lenz argues that the search did not return various additional records supposedly relevant to the question of which agency officials reviewed the relevant IRS and DOJ documents stored at NARA. *See* Stonehill Mot. at 32–39. But "the fact that a particular document was not found does not demonstrate the inadequacy of a search." *Boyd v. Crim. Div. of U.S. Dep't of Just.*, 475 F.3d 381, 391 (D.C. Cir. 2007). That is also true of the fact that a particular document never existed in the first place, or that a document was destroyed as part of the agency's regular retention schedule. *See Yeager v. Drug Enf't Admin.*, 678 F.2d 315, 321 (D.C. Cir. 1982) ("A requester is entitled only to records that an agency has in fact chosen to create and retain"). Because Lenz has not identified any way in which NARA's "*search* for the requested documents was *[in]adequate*," *Shapiro*, 40 F.4th at 613 (internal alteration omitted) (emphasis in original), Lenz's quibbles with the failure to locate other responsive materials do not move the needle.

---

favor of according due deference to Congress' affirmatively expressed intent to control its own documents").

*Third*, Lenz objects that NARA did not manually search inside the boxes of Stonehill documents that DOJ's Criminal Division transferred to the Washington National Records Center. *See* Stonehill Mot. at 41–45. According to Lenz, SF-135 and OF-11 forms could be stored inside those boxes, meaning that, "[i]f the contents of the boxes were not reviewed, [the National Archives] did not conduct an adequate search" for records pertaining to its "storage, transfer, and review" of Stonehill documents. *Id.* at 43. This argument, too, fails.

Start with the SF-135 forms associated with the Criminal Division documents. NARA has "already found and produced" those forms. Def's Reply at 23; *see* ECF No. 26-2 at 3, 18, 20 (SF-135 forms documenting the three transfers of Stonehill Criminal Division documents to the National Archives). As NARA explained in an April 2023 letter, "Standard Forms 135 for W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, W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, and W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 were *released to you under interim release dated February 2, 2023*." ECF No. 21-3 at 121 (emphasis in original). Indeed, Lenz himself admits that, "[d]uring its search for responsive documents [as to the Stonehill Criminal Division documents], NARA located three SF-135's [*sic*] dated May 8, 1984, October 29, 1990 and January 11, 2007." Stonehill Mot. at 42. It is unclear why Lenz contends that NARA must perform a search to find documents that he concedes he already possesses.

Turning to the OF-11 forms supposedly associated with and stored alongside the Criminal Division documents, "[t]here is no requirement that an agency search every record system[,]" only the systems that are "reasonably expected to produce the information requested." *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). But NARA has established that OF-11s cannot be "reasonably expected" to be found inside Criminal Division document boxes. Ever since the development of ARCIS in 2009, agencies "primarily" submit their requests to retrieve records from the federal records centers online. Scanlon Decl. ¶ 11. NARA has already searched its online

9

database and located one withdrawal request for the Criminal Division documents.  *See* ECF No. 21-3 at 60, 121.  To the extent that any OF-11 forms for retrieval of Criminal Division documents were submitted on paper before 2009, OF-11s are temporary records scheduled for destruction after 3 years.  Scanlon Decl. ¶ 25.  It is thus highly unlikely that they would turn up in a search of the Criminal Division boxes conducted today.

In arguing against this conclusion, Lenz points to a declaration by IRS attorney Helene Newsome attesting that, in a different Stonehill FOIA case against the IRS, NARA searched boxes of IRS documents for responsive records and found OF-11 forms stored inside.  *See* Stonehill Mot. at 41–42; ECF No. 11-11 at 17 (2d Newsome Decl.) ¶¶ 69–70.  But evidence of that prior search ultimately proves too much.  As NARA explained in that other case, it was a "very long shot" that "open[ing] each of the 89 boxes" of IRS documents would turn up responsive documents.  ECF No. 26-4 at 16–17.  Only if "the searcher g[ot] really lucky" would searching inside the boxes reveal any "additional information" about the identities of agency officials who requested them from NARA.  *Id.*  And indeed, when NARA did manually search the 89 boxes, it located only four OF-11 forms.  2d Newsome Decl. ¶ 70.  That approximately-four-percent success rate does not indicate a reasonable likelihood of finding OF-11 forms inside boxes of agency documents, including those documents transferred to NARA from the Criminal Division.  *See Oglesby*, 920 F.2d at 68.

*Fourth*, Lenz argues that NARA failed to search its College Park records center for records pertaining to a tranche of Criminal Division files that Lenz believes may have been accessioned there.  *See* Stonehill Mot. at 45.  But NARA's records conclusively reflect that all documents in that tranche were "permanently withdrawn [from the Archives] . . . in Oct[ober] of 1999."  ECF No. 21-3 at 121; *see also* Def's Reply at 23 n.11.  Because the documents could not simultaneously

be accessioned in College Park and permanently withdrawn, there was no need for NARA to look for them.

### B.     Motion to Substitute

"If a party dies and the claim is not extinguished, the court may order substitution of the proper party." Fed. R. Civ. P. 25(a)(1). "[I]t is generally accepted that the proper party for substitution must be a 'legal representative' of the deceased." *Sinito v. U.S. Dep't of Just.*, 176 F.3d 512, 516 (D.C. Cir. 1999) (citing 7C Wright, Miller & Kane, at § 1956); *see also Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1029 (D.C. Cir. 1999) ("[A] cause of action under FOIA survives the death of the original requestor, as long as the substitute requestor is found to be the original requestor's legal representative."). The legal representatives of a decedent include the executors or administrators of his estate, along with his estate's distributees. *See Sinito*, 176 F.3d at 516.

As noted above, after Mrs. Stonehill died, Robert Heggestad, Mrs. Stonehill's counsel and the representative of Mr. Stonehill's estate, moved to substitute Lenz, the co-executor of Mr. Stonehill's estate, in Mrs. Stonehill's place. *See* Substitution Mot. at 1–2. Whether Lenz is a "proper party for substitution" depends on whether Mrs. Stonehill made the FOIA requests at issue here in her personal capacity or on behalf of Mr. Stonehill's estate. *Sinito*, 176 F.3d at 516. If the former is true, Lenz is not a proper party because he is not a "legal representative" of Mrs. Stonehill herself. If the latter is true, Dr. Lenz is a proper party because he is a "legal representative" of Mr. Stonehill's estate.

NARA argues that, because Mrs. Stonehill did not "clearly indicate" that she was submitting the instant FOIA requests on behalf of Mr. Stonehill's estate, the Court should conclude that Mrs. Stonehill lodged them in her individual capacity only. *See* Substitution Opp. at 5–9

11

(citing, *inter alia*, *Smartflash, LLC v. U.S. Pat. & Trademark Off.*, 2023 WL 5289287, at *5 (D.D.C. 2023)).  To start, the Court is not convinced that the "clearly indicates" standard applies here.  It is true that a plaintiff lacks Article III standing to bring a FOIA challenge if the initial FOIA request does not "clearly indicate" that it was made on the plaintiff's behalf.  *See, e.g.*, *Smartflash*, 2023 WL 5289287, at *5–6 (holding that plaintiff lacked standing because the FOIA requests were lodged by counsel and did not "clearly indicate" they were made on behalf of plaintiff); *SAE Prods., Inc. v. F.B.I.*, 589 F. Supp. 2d 76, 81–82 (D.D.C. 2008) (corporation lacked standing because the FOIA requests submitted by its president did not "clearly indicate" that they were made on the corporation's behalf).  But Mrs. Stonehill's (or Lenz's) constitutional standing to sue is not in question.  Whether or not the requests at issue were filed in Mrs. Stonehill's personal capacity or her capacity as estate executor, it is undisputed that they were *hers*.  Nor has NARA cited any case suggesting that, when a court adjudicating a substitution motion is attempting to discern which of two possible hats a FOIA requestor was wearing when he made his request, FOIA standing doctrine is the proper body of law to apply.

In any event, Mrs. Stonehill's three FOIA requests "clearly indicated" that they were filed in her capacity as executor.  Each request (sent in by Heggestad) stated the date of Mr. Stonehill's death and incorporated a "Power of Attorney from Pauline Stonehill, Mr. Stonehill's wife, beneficiary and Co-Executor and Co-Administrator of the Estate of Harry Stonehill."  ECF No. 21-3 at 4, 48, 64.  The Power of Attorney, in turn, stated that Mrs. Stonehill, "pursuant to [her] authority . . . as CO-EXECUTOR AND ADMINISTRATOR OF THE ESTATE OF HARRY S. STONEHILL," had appointed Heggestad "as the ESTATE's true and lawful attorney-in fact and to handle the claims of the ESTATE against the U.S. Government."  *Id.* at 36.  Two of the requests also included various "documents . . . confirming that the Estate of Harry S. Stonehill remains

open in Switzerland." *Id.* at 4, 64.  And Mrs. Stonehill's complaint repeatedly identified her, including in its caption, as the "Co-executor and Co-special administrator of the Estate of Harry S. Stonehill."  Compl. at 1, 4.

All of these representations and statements would have been wholly superfluous had the FOIA requests been lodged solely in Mrs. Stonehill's personal capacity.  They therefore offer sufficient clarity that that was not the case, and the Court accordingly concludes that Mrs. Stonehill submitted the requests on behalf of Mr. Stonehill's estate and that Lenz is properly substituted as plaintiff.

But that does not end the matter.  NARA contends that, "as a matter of law, an individual cannot submit a request on behalf of an estate under FOIA."  Opp. to Substitution at 13.  FOIA requires agencies in receipt of procedurally-compliant "request[s] for records" to "make the records promptly available to any person."  5 U.S.C. § 552(a)(3)(A).  "'[P]erson' includes an individual, partnership, corporation, association, or public or private organization other than an agency."  *Id.* § 551(2).  NARA argues that the omission of "estate" from this definition means that "an individual cannot submit a request on behalf of an estate under the Act."  Opp. to Substitution at 13.

"Whether an estate qualifies as a 'person' under FOIA is a question of statutory standing." *Stonehill v. FBI*, 20-cv-1445 (APM) (D.D.C. Jan. 12, 2024) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 & n.4 (2014) (explaining that "statutory standing" goes to whether the plaintiff "falls within the class of plaintiffs whom [the legislature] has authorized to sue")).  And the statutory standing inquiry "is not jurisdictional, and may be waived." *Hisp. Affs. Project v. Perez*, 206 F. Supp. 3d 348, 367 (D.D.C. 2016).  Here, NARA did not raise the issue of statutory standing at any point prior to filing its opposition to Lenz's motion to

13

substitute—even though Mrs. Stonehill's filings made clear she was suing on behalf of the estate. *See generally* ECF No. 14 (Answer); Def's Mot.  NARA therefore waived this argument.

NARA also argues that, under D.C. law, Mrs. Stonehill lacked capacity to sue as the estate's foreign personal representative.  Opp. to Substitution at 17; *see* Fed. R. Civ. P. 17(b)(3) (explaining that, for individuals acting in a representative capacity, capacity to sue is dictated by "the law of the state where the court is located").  "In the District of Columbia, 'a foreign personal representative administering an estate which has property located in the District of Columbia shall file with the Register a copy of the appointment as personal representative and an authenticated copy of the decedent's will.'" *Est. of Scherban v. Suntrust Bank*, 2016 WL 777913, at *1 (D.D.C. 2016) (quoting D.C. Code § 20-341) (internal alterations omitted).  If the estate's representative does not establish his legitimacy by filing those documents, he lacks capacity to sue. *See id.* at *2.

NARA contends that, because a lawsuit can constitute a form of property triggering this filing requirement, *see id.* at *1–2, Mrs. Stonehill needed to comply with the requirement but did not.  Opp. to Substitution at 18.  But a challenge "to a party's authority to sue or be sued in a representative capacity" must be made in a "specific denial," at the pleading stage. Fed. R. Civ. P. 9(a)(1)(B), (a)(2); *see also* Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, Waiver of Objections to Capacity § 1295 (4th ed. 2008) (explaining that failure to object to a party's capacity to sue "by motion or responsive pleading or in an appropriate amendment" leads to waiver of the objection).  Here, just as with the statutory standing issue, NARA did not raise any challenge to Mrs. Stonehill's capacity to sue prior to its opposition to the motion to substitute.  To be sure, NARA argues that it failed to raise these arguments because it understood Mrs. Stonehill to have been acting individually rather than in her capacity as the co-executor of Mr. Stonehill's estate.  Substitution Opp. at 18 n.2.  But Mrs. Stonehill's FOIA requests

14

and complaint made plain that she was seeking records on behalf of her husband's estate. NARA's "mistaken belief that she was acting in her individual capacity does not excuse its failure to contest her authority to sue at the outset of the case." *Stonehill v. FBI*, 20-cv-1445 (APM) (D.D.C. Jan. 12, 2024).

NARA finally argues that it was improper for Heggestad, Mrs. Stonehill's counsel, to file the substitution motion, since "an attorney retained to represent an individual may not file a suggestion of death [or motion to substitute] upon that individual's passing." *Robinson v. Pezzat*, 2016 WL 10829004, at *1 n.3 (D.D.C. 2016) (citing *Rende v. Kay*, 415 F.2d 983, 983–85 (D.C. Cir. 1969)). "Instead, the suggestion or motion to substitute must be made by 'any party or by the decedent's successor or representative' of his or her estate." *Id.* (quoting Fed. R. Civ. P. 25(a)(1)). Here, however, Lenz—the surviving co-executor of Mr. Stonehill's estate and thus Mrs. Stonehill's relevant "representative" in this matter—"requested that [Heggestad] continue to represent Mr. Stonehill's Estate in all Stonehill-related litigation" after Mrs. Stonehill's death. Substitution Reply at 10–11. In this particular case, the "personal representative to be substituted" has not opted to "retain different counsel," and so Heggestad's "responsibilities do [] necessarily transfer to the decedent's . . . personal representative." *Breen v. Chao*, 322 F.R.D. 427, 430 (D.D.C. 2017). It was therefore permissible for Heggestad to file the motion to substitute on Lenz's behalf.

### III.  Conclusion

For the foregoing reasons, NARA's motion for summary judgment, ECF No. 21, and Lenz's motion to substitute, ECF No. 33 are granted, and Lenz's motion for summary judgment, ECF No. 26-1, is denied. Dr. Patrick Lenz, in his capacity as executor of the Stonehill estate, shall be substituted as the plaintiff for all further proceedings in this action.

An Order will accompany this Opinion.

Date:   September 25, 2024

_____
CARL J. NICHOLS
United States District Court Judge